| | |
|---|---|
| JOHN HATFIELD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>O'REILLY AUTOMOTIVE, INC.<br><br>Defendant. | Civil Action No.: 6:26-CV-3030-SRB<br><br><br><br>FIRST AMENDED CLASS ACTION COMPLAINT |

Plaintiff John Hatfield ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against O'Reilly Automotive, Inc. ("O'Reilly") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.     It is both unfair and unlawful for entities like O'Reilly to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without making available a reasonable alternative standard to avoid those surcharges. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" under the O'Reilly Employee Benefits Plan (the "Plan") in a manner that violates the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness programs that promote health if, and ***only if***, such programs strictly comply with the criteria governing these programs, including: (i) offering a meaningful and accessible *reasonable*

1

alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclosing the availability of that alternative standard in "all plan materials" describing the surcharge; and (iii) making available the "full reward" to all participants who satisfy the reasonable alternative standard. *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j). Instead, Defendant imposes a discriminatory tobacco surcharge without making available, or notifying participants of, a *reasonable* alternative standard that provides those who satisfy it with the full reward that non-smokers received, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2. Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements.

3. ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendant's Plan imposes a tobacco surcharge that is 10% of monthly premiums while failing to operate a compliant wellness program under ERISA.

4.      The Plan does not clearly or consistently establish a *reasonable* alternative standard that informs participants of all available avenues to avoid the surcharge. Further, Defendant imposes the surcharge on employees unless all the members of their household are also tobacco-free, conditioning employees' premium payments on another person's health status. At the same time, Defendant fails to disclose in all Plan materials that participants may qualify for the full reward or that they have the right to a physician-directed alternative. Defendant fails to notify participants of any alternative standard. In doing so, Defendant shifts Plan costs onto employees based on a health factor without satisfying the requirements needed to take advantage of ERISA's safe harbor.

5.      The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory

---

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness

safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

6. Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual

---

programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **the same, full reward must be provided to that individual** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to make available a reasonable alternative standard that provides full reimbursement to employees who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants of all the avenues available to them to avoid the surcharge, including benefit guides, plan documents, and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

7. Defendant cannot qualify for the statutory safe harbor because, while it imposes a health-based surcharge, it does not make available to participants (or notify them of) a compliant wellness program. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*id.*, 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Defendant's wellness program is that it does not offer any alternative standard that makes available the "full reward" to all participants who complete it, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). The Plan makes no mention of an alternative standard or of making available the full reward upon completion of that alternative standard. To that extent, Defendant fails to make available a clearly defined, *reasonable* alternative standard that ensures employees who satisfy that standard receive a full refund of the 10% monthly surcharges that are withheld from participants' paychecks. Instead, Defendant uses these unlawfully obtained funds to offset its own contributions to the Plan, which allows additional money to remain in its accounts on which the company earns interest. By

5

increasing participant contributions through this surcharge, Defendant shifts costs away from itself and onto participants.

8. Defendant's wellness program is also unreasonable because it conditions a participant's required premium contributions on a dependent's health status. Under the Plan, an employee's payroll contributions are larger not only if the employee uses tobacco, but also if any of the employee's household members use tobacco. As a result, even a tobacco-free employee is denied the full reward unless the spouse and all other dependents are also tobacco-free. This violates ERISA's anti-discrimination rules because it conditions a participant's cost of coverage on a dependent's health factor. *See* 29 U.S.C. § 1182(b)(1); 29 C.F.R. § 2590.702(c)(1). ERISA's wellness program regulations require that any reasonable alternative standard be made available to the *individual* participant and do not permit an employer to deny the full reward, or continue to impose a surcharge, based on the conduct or health status of a spouse or other dependent. *See* 29 C.F.R. § 2590.702(f)(4)(iii). Because a participant's premium contributions remain elevated unless a third party independently satisfies the health-contingent condition, Defendant operates a wellness program that is neither uniformly available nor compliant with ERISA's safe harbor.

9. Defendant also violates ERISA's wellness program regulations by failing to provide the notice required by statute and regulation, which is an independent basis for liability. Federal law requires that a plan "disclose in ***all plan materials*** describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). O'Reilly's participant-facing materials, including its annual benefits guides and Summary Plan Description ("SPD"), describe the tobacco surcharge and the higher premium contributions imposed on tobacco users, but do not disclose the alternative avenues by which participants may avoid the surcharge and qualify for the reward. Specifically, Defendant's plan

6

materials fail to inform participants that they may satisfy an alternative standard or that they have a right to a physician-directed alternative, as expressly required by ERISA and the wellness program regulations. *See* 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v). Nor do the materials participants rely upon during enrollment explain how completion of the tobacco cessation program entitled participants to full relief from surcharges already assessed. Instead, the Plan's materials state that tobacco users can avoid the surcharge if they are tobacco-free, without disclosing any mechanism for earning the full reward during the year in which the surcharge is imposed. To that extent, the notice provided to participants is deficient because it fails to notify participants of a *reasonable* alternative standard and fails to include the required physician-accommodation statement.

10. These disclosure failures are not technical defects. The Final Regulations make clear that where a plan imposes a premium differential based on tobacco use, its disclosures must include notice of the availability of a *reasonable* alternative standard and of an option to involve participants' physicians. *See* Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). Proper notice is critical because failing to notify participants can chill engagement with the "program of health promotion" and deter participants from taking steps to bettering their health. Because Defendant's Plan materials do not contain these required disclosures, Defendant cannot invoke ERISA's wellness program safe harbor as an affirmative defense. The tobacco surcharge imposed through the Plan therefore constitutes unlawful discrimination based on a health-status-related factor in violation of ERISA.

11. Because Defendant imposes a biweekly 10% tobacco surcharge but does not make available a reasonable alternative standard or provide the required notice in all Plan materials

discussing the surcharge, the Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied." Final Regulations, 33160. Upon information and belief, Defendant does not provide compliant notice in additional participant-facing materials discussing the premium differential, in violation of ERISA's wellness program rules. As a result of these deficiencies, Defendant cannot take advantage of the statutory safe harbor and, therefore, the surcharge functions as a penalty rather than a compliant wellness incentive. Deficient and misleading notice is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

12.     This Complaint alleges that Defendant imposes a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendant bears the burden of proving that its tobacco surcharge is lawful by showing that its wellness program fully complies with ***every*** requirement under ERISA, including making available a reasonable alternative standard and informing participants of all the avenues available to them to avoid the surcharge. Not informing participants that there are avenues available to them to avoid the surcharge makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure this fundamental defect. This type of discrimination is permissible only if employers meet strict criteria, which Defendant does not. Defendant's Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

13.     Participants like Mr. Hatfield are permitted to challenge a surcharge when there is no compliant wellness program made available or when employers provide deficient or misleading information. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions along with facts showing the deficiencies in the wellness program, the burden shifts to

8

the employer, O'Reilly, to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 604 U.S. 693, 704 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff 's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

14. Plaintiff was an employee of O'Reilly who paid the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

15. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendant from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

16. Plaintiff John Hatfield is, and at all times mentioned herein was, an individual citizen of the State of Arizona residing in the County of Maricopa. Plaintiff was an employee of Defendant, who paid a tobacco surcharge of 10% of his medical premium (roughly $780 annually) under the Plan. Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

17. Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

18.     Defendant O'Reilly is a Delaware corporation with its principal place of business in Springfield, Missouri. At all relevant times, O'Reilly sponsored, maintained, and administered the Plan. O'Reilly exercised discretionary authority and control over the design and administration of the Plan, including the assessment of participant premium contributions and the implementation of its tobacco-related premium differential, and therefore acted as a plan fiduciary within the meaning of ERISA. At all times relevant to this action, O'Reilly employed tens of thousands of individuals nationwide and maintained a Plan covering a substantial number of participants and beneficiaries. The Plan is an employee welfare benefit plan subject to the provisions and statutory requirements of ERISA, 29 U.S.C. § 1002(3). As of December 31, 2024, there were over 90,000 participants in the Plan.

**JURISDICTION AND VENUE**

19.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has personal jurisdiction over Defendant because O'Reilly has significant operations in this District, Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiff in the State of Missouri, and O'Reilly has purposefully availed itself of the privilege of conducting business in the State of Missouri.

21.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, Defendant conducts business in this District, and Defendant may be found in this District.

10

I. **DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

**A. Statutory and Regulatory Requirements**

22.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

23.     The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

24.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly

11

reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

25. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

26. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

12

27.     The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if <u>all</u> of the [] requirements are satisfied***." (emphasis added)).

### B.  Regulatory Criteria

28.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who

does not meet the initial standard based on a measurement, test, or screening. . . .” § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: “The full reward under the outcome-based wellness program must be available to all similarly situated individuals.” § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

29. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

30. Regarding the first criteria, “the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease.” Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

31. A key requirement of the fourth criterion for outcome-based programs is that the “full reward” must be available to “all similarly situated individuals[,]” regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is “[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should

14

be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

32. The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

33. For health contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD),

15

as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## II. DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

34. Defendant's tobacco surcharge is discriminatory because Defendant fails to make available a compliant wellness program that would allow participants to avoid the entire surcharge during the Plan year. Under the Plan, Defendant imposes a tobacco surcharge of 10% of participants' premium payment who are tobacco users. The surcharge is assessed through employees' regular before-tax payroll contributions for medical coverage.

35. Defendant's wellness program fails the "full reward" requirement on its face. Participant-facing documents confirm that Defendant provides a single, binary path: either certify as a non-user of tobacco or vapor products and receive the 10% "Nontobacco Use Discount," or pay the higher tobacco-user rate for the entire Plan year.[5] Defendant's 2023 Benefits Enrollment Guide tells employees that open enrollment is the time when they have "one opportunity to make decisions that will impact you and your family for the rest of the year" and that benefits elected for 2023 are "in effect until Dec. 31, 2023" and that mid-year changes are "NOT permitted" absent a qualifying life event. Ex. B at 2, 4.

36. Neither the benefit guides nor the SPD disclose any mechanism by which a participant who does not initially certify as tobacco-free can earn the same, full 10% discount for the Plan year by satisfying an alternative standard. Read together, these materials communicate a

---

[5] The Plan's SPD (2023) is attached hereto as Exhibit A, and Defendant's 2023 Benefits Guide is attached hereto as Exhibit B. *See* Ex. A at 12.

locked-in, Plan-year premium structure, not a pathway by which tobacco users can complete an alternative standard and receive the same full reward made available to non-tobacco users for that plan year. Upon information and belief, to the extent Defendant contends that participants could complete some alternative standard to qualify for the 10% Nontobacco Use Discount, Defendant did not provide retroactive reimbursement to participants who completed that alternative standard. Thus, participants who paid the higher tobacco-user rate during the Plan year were deprived of the "full reward" because they did not receive the full Plan-year value of the 10% Nontobacco Use Discount.

37. To the extent Defendant contends that completion of a tobacco cessation program operates as a reasonable alternative standard, the Plan's documents independently fail the full reward requirement because they do not disclose, and do not provide, retroactive reimbursement of tobacco surcharges already withheld during the Plan year. The benefit guide contains only a limited "Important Notice," stating that if it is unreasonably difficult due to a medical condition to achieve the standards for the discount, or medically inadvisable to attempt to achieve them, participants may call O'Reilly and O'Reilly will assist in developing an alternative to qualify for the discount. Ex. B at 9. That language is deficient for several independent reasons. It does not tell all tobacco users that an alternative standard is available; it limits the disclosure to those with medical difficulty or medical inadvisability; it omits the required statement that recommendations of a participant's personal physician will be accommodated; it does not identify any smoking cessation program or other reasonable alternative standard; and it does not state that completing any alternative during the plan year entitles the participant to the same, full reward, including relief from surcharges already collected for that year. A reasonable participant reading Defendant's materials would understand the program to provide a prospective payroll discount for those who

17

certify non-use, not a retroactive full reward available to tobacco users who complete a reasonable alternative standard during the Plan year.

38.     Defendant conditions eligibility for its 10% "Nontobacco Use Discount" on participants and their enrolled family members identifying as non-users of tobacco or vapor products. However, Defendant's Plan materials do not disclose that participants who satisfy a reasonable alternative standard during the Plan year will receive the full discount for that year, nor do they explain when or how the discount becomes effective after eligibility is achieved. By failing to make the full reward available to participants who satisfy the health-contingent condition during the Plan year, and by omitting any explanation of the timing or scope of relief, Defendant denies participants the full reward required by ERISA's wellness program regulations and unlawfully imposes higher premium contributions based on health status.

39.     Even if Defendant contends that the Plan makes the "full reward" available to participants who complete the tobacco cessation program, Defendant fails to clearly and affirmatively disclose that information to participants in the materials they rely on. Defendant's benefit guides, the primary document used during enrollment, describes the tobacco surcharge and the higher premium contributions imposed on tobacco users, but does not inform participants of an alternative standard, whether completion of the an alternative standard during the Plan year entitles them to relief from surcharges already assessed, or whether any mechanism exists to obtain the full reward during that year. Instead, the benefit guides state that tobacco-user status is locked for the Plan year

18

**10% NONTOBACCO USE DISCOUNT**

Smoking and the use of tobacco products are key contributors to rising health care costs. Therefore, O'Reilly offers participants in all medical plans a 10% discount on medical plan premiums if they (and enrolled family members) do not use tobacco or vapor products. To receive this discount, they must identify as a person who does not use tobacco products in the online enrollment system or by completing the Nontobacco Use Disclosure in myHR. Enrolled family members must also qualify as nontobacco users for the team member to be eligible for the discount.

**Important Notice:** If it is unreasonably difficult due to a medical condition to achieve the standards for the discount under this program, or if it is medically inadvisable to attempt to achieve the standards for the discount under this program, call us at **800-471-7431 option 3**, or **ext. 1387**, and we will assist in developing an alternative to qualify for the discount.

Ex. B at 9.

40.      As reflected in Defendant's benefit guide, the tobacco-related premium differential is presented as a binary certification: participants must identify as non-users of tobacco or vapor products in order to receive the 10% "Nontobacco Use Discount." The materials do not describe an alternative standard by which participants who do not meet the initial standard may qualify for the discount, do not explain that participants who satisfy an alternative standard are entitled to the full reward, and do not identify when or how any premium adjustment would be applied. Instead, the benefit guide presents an "either or" eligibility structure in which participants either certify non-use or forfeit the discount, with no disclosed path to relief for participants who cannot meet the standard due to medical reasons.

41.      Critically, Defendant's materials also omit the required statement that recommendations of a participant's personal physician will be accommodated. The benefit guide is the primary document upon which participants are informed of Plan terms affecting premium contributions. Because Defendant's tobacco-related premium differential directly affects the amount participants must pay for coverage, ERISA's wellness program regulations require these materials to include clear notice of the availability of a reasonable alternative standard and a statement that a participant's personal physician's recommendations will be accommodated. The

19

benefit guide contains no such statement and fails to inform participants that they may qualify for the full reward through an alternative standard.

42. Similarly, the Plan's SPD fails to disclose any reasonable alternative standard that makes the full reward available to all similarly situated individuals. In the section addressing the tobacco surcharge, the SPD does not describe any alternative means of qualifying for the reward and omits the required statement that the recommendations of a participant's personal physician will be accommodated. The following is the section in the 2023 SPD discussing the tobacco surcharge:

> • A 10% discount is available if you complete a Non- Tobacco User Affirmation and you and your covered Dependents abstain from using tobacco products in accordance with the terms of the Affirmation. If it is unreasonably difficult due to a medical condition for you or your covered Dependents to achieve the standards for the reward under this program, or if it is medically inadvisable for you or your covered Dependents to attempt to achieve the standards for the reward under this program, call your Employer, and your Employer will work with you to develop another way to qualify for the reward.

43. The limited notice that is provided is also misleading. It suggests that participants may contact their "Employer" to inquire about an alternative standard but improperly restricts that option to individuals for whom it is "unreasonably difficult" or "medically inadvisable" to attempt to quit using tobacco. This language reflects an outdated regulatory framework and fails to comply with current requirements, which mandate that a reasonable alternative standard be made available to all participants who do not initially qualify for the reward, including all individuals assessed the 10% surcharge. The SPD does not identify any tobacco cessation program, does not provide specific contact information, does not advise that all tobacco users are entitled to a reasonable alternative standard, does not contain the physician-accommodation statement, and does not state

20

Case 6:26-cv-03030-SRB    Document 25    Filed 06/08/26    Page 20 of 45

that successful completion of an alternative standard entitles participants to the same full reward for the plan year. By failing to disclose a reasonable alternative standard, failing to include the physician-accommodation statement, and failing to provide adequate notice and contact information, Defendant violates each of the notice requirements set forth in 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v).

44.     Defendant's failure here is made more striking by its own conduct as to a separate wellness program described in the very same Benefit Guide. In addition to the tobacco-related premium differential, Defendant offers participants enrolled in Cigna and Allegiance medical plans a 10% "Wellness Premium Discount" conditioned on completion of an annual preventive office visit and biometric screening. For that program, Defendant included a formal "NOTICE REGARDING WELLNESS PROGRAM" that recites the federal framework governing employer-sponsored wellness programs, including "the Americans with Disabilities Act of 1990, the Genetic Information Nondiscrimination Act of 2008, and the Health Insurance Portability and Accountability Act," describes the incentive offered, addresses voluntary participation, and explains confidentiality and non-retaliation protections. Defendant included no equivalent notice for the tobacco-related premium differential. The asymmetry confirms that Defendant understood how to draft a notice that complies with the disclosure regime governing health-contingent wellness programs and chose not to do so for its tobacco surcharge.

45.     These omissions independently violate ERISA's wellness program regulations and preclude Defendant from invoking the statutory safe harbor for health-contingent wellness programs. By presenting the tobacco-related premium differential without disclosing any alternative standard, any entitlement to the full reward, or any physician-accommodation process, Defendant's wellness program is opaque, inaccessible, and structured in a manner that deters

21

participation rather than promoting health. Upon information and belief, Defendant likewise fails to provide compliant notice in other participant-facing communications describing or implementing the tobacco-related premium differential.

46. ERISA requires that outcome-based wellness programs tied to tobacco use be reasonably designed to improve health, uniformly available to all similarly situated individuals, and supported by a reasonable alternative standard that affords the same full reward regardless of when the participant satisfies the alternative during the plan year. They also require clear notice. Defendant's program, as communicated in its own materials, fails these mandates. It offers no alternative standard and does not make clear that participants who cannot meet the initial standard may qualify for the same premium relief through a physician-directed or other reasonable alternative. Instead, Defendant's materials present cessation of tobacco use as the sole path to avoiding the tobacco-related premium differential, conveying that participants must quit smoking outright to obtain relief, which is directly contrary to ERISA's wellness program rules, which require plans to offer meaningful alternative standards, including accommodations based on a participant's personal physician's recommendations.

47. Defendant was required to include clear and explicit disclosure that participants who could not satisfy the initial tobacco-use standard had the right to pursue a reasonable alternative standard, including an additional option to participate in one directed by a participant's personal physician, and that satisfaction of such an alternative would entitle the participant to the same, full premium relief made available to non-tobacco users. Had Defendant provided this required information in its participant-facing materials, participants like Plaintiff would have understood that quitting smoking outright was not the sole means of avoiding the tobacco-related

22

premium differential and could have taken timely steps to obtain the premium relief to which they were entitled under ERISA's wellness program regulations.

48. Plaintiff paid the tobacco surcharge and was never informed by Defendant or anyone acting on their behalf that completing the tobacco cessation program would result in relief from the surcharge for the Plan year in which the surcharge was imposed. Defendant's failure to disclose all available avenues to avoid or mitigate the surcharge deprived Plaintiff and other participants of the information necessary to make informed benefit decisions and independently disqualifies the Plan from ERISA's wellness program safe harbor.

49. The lack of alternative standards, coupled with the deficient disclosures, reflects a program designed and administered in such a way as to be more for revenue generation and cost shifting than for bona fide health promotion. By omitting material information and required disclosures, Defendant deprived participants of the ability to make informed choices about their health coverage and financial obligations, violating the regulatory framework governing wellness programs and ERISA's fiduciary duties of loyalty and prudence.

50. Allowing entities like O'Reilly to exploit its participants and unlawfully extract millions of dollars annually from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This type of conduct violates not only ERISA's antidiscrimination rules governing wellness programs but also the statute's fiduciary duties of loyalty and prudence, as Defendant failed to administer the Plan solely in the interest of participants.

23

## III. DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

51. Defendant administered the tobacco surcharge by designating which participants are charged and withholding the premium differential directly from participants' paychecks as a before-tax plan contribution, alongside required premium deductions. These deductions are part of the funding stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

52. The governing documents clarify why the surcharge caused plan-level harm and why Defendant benefitted from the challenged practice. The SPD states in bold, all-capital language that the benefits are "self-insured by O'Reilly Automotive, Inc.," which is "responsible for their payment." Ex. A, "Important Information." The SPD further provides that O'Reilly is the Plan Sponsor, that O'Reilly is the Plan Administrator, and that "[t]he cost of the Plan is shared by Employee and Employer." It also defines the Employer as "the plan sponsor self-insuring the benefits described in this booklet." *Id.* at 98.

53. The Plan's claims are thus paid from a single, commingled funding pool consisting of participant contributions withheld through payroll deduction and Defendant's contributions from its general assets. Because the Plan is self-funded, every dollar of tobacco surcharge withheld from participant wages reduced—dollar-for-dollar—the contributions Defendant would otherwise have had to make from its own assets to fund Plan claims. The tobacco surcharge was not a separate damages payment or outside penalty. Defendant described it as part of the employee's premium contribution structure and collected it through payroll deductions as a condition of medical coverage. Ex. A at 12. Once withheld from participants' wages for Plan coverage, those amounts

24

were Plan assets[6] or, at minimum, amounts that O'Reilly was required to handle solely for the Plan's benefit and in conformity with ERISA.

54. O'Reilly did not segregate the challenged tobacco surcharge amounts for the exclusive benefit of the Plan or use them to increase Plan assets. Instead, because the Plan was self-funded and O'Reilly was responsible for paying benefits, O'Reilly used those additional participant contributions to reduce, avoid, or delay its own funding obligations, thereby preserving corporate cash and earning the time value, interest, investment return, or float associated with money O'Reilly otherwise would have had to contribute to satisfy Plan obligations. That is a concrete Plan-level loss and a corresponding benefit to O'Reilly because the Plan was deprived of employer funding and/or earnings that should have accrued to the Plan, while O'Reilly retained the economic value for itself.

55. Defendant's diversion of Plan assets caused measurable, dollar-for-dollar losses to the Plan. Had the tobacco surcharge proceeds been treated, as ERISA and the Plan documents require, as a true third stream of Plan funding, the Plan's asset base would have grown commensurately. Instead, the diverted funds offset Defendant's contributions and remained in Defendant's corporate accounts, where they earned interest for Defendant's exclusive benefit. The cumulative result was a Plan asset base smaller than it should have been, and a Defendant balance sheet larger than it should have been, by an aggregate amount equal to the total tobacco surcharges collected during the limitations period. A reduced Plan asset base, in turn, translates into higher participant contributions and reduced reserves in subsequent Plan years. Plaintiff and the proposed

---

[6] ERISA's implementing regulations provide that "the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution . . . to the plan, as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a)(1).

Class therefore bore, and continue to bear, increased contribution costs as a direct consequence of Defendant's diversion of Plan assets.

56. This practice constitutes classic self-dealing because Defendant used the mechanisms of the Plan to realize savings for itself, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendant's actions caused the Plan to lose the very employer contributions it was otherwise supposed to receive, in violation of ERISA's fiduciary duty standards.

57. Independent of its diversion of Plan assets, Defendant also breached its fiduciary duties of prudence and loyalty by administering, year after year, a wellness program and participant communications that violated ERISA. The Plan's own SPD references an alternative-standard inquiry channel—demonstrating Defendant's awareness of the regulatory obligation to disclose an alternative standard—while the participant-facing benefit guides Defendant drafted, approved, and disseminated each year omitted any reference to an alternative standard, omitted the physician-accommodation statement, and presented the tobacco-related premium differential as a binary "certify or pay" structure with no path to mid-year relief. A prudent fiduciary administering a health-contingent premium differential would have reviewed the Plan documents, enrollment guide, payroll systems, and participant communications to ensure that the surcharge complied with ERISA, that participants were told how to obtain the alternative standard, that the physician-accommodation statement appeared in all required materials, and that payroll systems could issue retroactive credits or refunds when participants qualified for the full reward. Defendant did not do so and its continued dissemination of these noncompliant materials over multiple Plan years, without correction, was a failure of prudent administration in violation of 29 U.S.C. § 1104(a)(1)(B) and (D), and an independent breach of fiduciary duty.

26

## CLASS DEFINITION AND ALLEGATIONS

58.     Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

59.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, during the relevant time period, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

60.     Excluded from the Class are Defendant's officers and directors.

61.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

62.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(1).

63.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

64.     **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

    a.  Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;
    b.  Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

27

c. Whether Defendant provided the notice in **all** the Plan materials describing the surcharge;

d. Whether Defendant provided the required statement that participants' personal physicians' recommendations would be accommodated in all Plan materials describing the surcharge;

e. Whether Defendant's wellness program violates ERISA and the Final Regulations;

f. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge to offset its own contributions to the Plan;

g. Whether Defendant breached its fiduciary duties by administering the Plan in a way as to refuse reimbursing participants who complete the alternative standard offered;

h. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

i. The appropriate mechanisms to determine damages on a class-wide basis

65. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

66. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

28

67. Plaintiff seeks declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide declaratory relief is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))**

68. Plaintiff re-alleges and incorporates herein by reference allegations 1–67 of this Complaint.

69. Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of 10% of the premium contributions on households with participants who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to provide a reasonable alternative standard that makes available the full reward to those who satisfy the alternative standard, in violation of ERISA and the Final Regulations.

70. ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor in relation to the individual *or to an individual enrolled under the plan as a dependent of the individual*" *See* 29 U.S.C. § 1182(b)(1)

29

(emphasis added). Defendant's Plan violates this prohibition because it fails to provide a *reasonable* alternative standard ensuring that participants who satisfy that standard are eligible for the full reward, as required by 29 C.F.R. § 2590.702(f)(4)(iv).

71. ERISA's wellness program regulations require that the "full reward" associated with an outcome-based wellness program be made available to all similarly situated individuals who satisfy the applicable standard, including through completion of a reasonable alternative standard. Defendant's program fails this requirement. As reflected in Defendant's own materials, participants who do not initially qualify as nontobacco users are not informed that completion of an alternative standard during the Plan year entitles them to the same premium relief afforded to non-tobacco users, nor are they informed that the full reward will be made available upon satisfaction of an alternative standard. By structuring and communicating the program in a manner that withholds the full reward from participants who satisfy the applicable standard during the Plan year, and by failing to make clear that eligibility for the full reward turns solely on the participant's own satisfaction of the standard, Defendant denies uniform access to the full reward and treats similarly situated individuals differently based on health status. As a result, Defendant's tobacco-related premium differential fails to satisfy the requirements of 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(j), and 29 C.F.R. § 2590.702(f).

72. The Plan's own documents supply the missing full reward detail. They describe the nontobacco reward as a 10% discount from premium contributions, require participants and enrolled family members to certify non-use to obtain that discount, and tell participants that elections generally remain fixed for the plan year. *See* Ex. B at 4. They do not disclose any mechanism by which a participant who is assessed the surcharge can complete an alternative

30

standard during the plan year and receive the same 10% discount for that entire year, including restoration of amounts already deducted from prior paychecks.

73.     Nor do the materials say that the alternative referenced in the SPD or guide, if invoked, would result in a retroactive credit, refund, or payroll adjustment for all months in the plan year during which the surcharge was imposed. At most, the materials suggest that O'Reilly might prospectively assist certain medically burdened participants in finding "another way to qualify for the reward." That is not the same as making available the "same, full reward" to all similarly situated individuals who satisfy a reasonable alternative standard during the plan year.

74.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

### COUNT II
**UNLAWFUL SURCHARGE – FAILURE TO PROVIDE
COMPLIANT ALTERNATIVE STANDARD
(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))**

75.     Plaintiff re-alleges and incorporates herein by reference allegations 1–67 of this Complaint.

31

76. Defendant's tobacco surcharge program is not and was not a permissible wellness program because it failed to provide proper notice of the availability of a *reasonable* alternative standard, in violation of 29 C.F.R. § 2590.702(f)(4)(v).

77. Defendant's key Plan materials, including the benefit guides and SPD, describing the tobacco-related premium differential failed to provide the disclosures required for an outcome-based wellness program. The materials did not inform participants of a reasonable alternative standard during the Plan year that would entitle participants to the same premium relief afforded to non-tobacco users or explain when or how any premium adjustment would be applied. In addition, Plan materials contained misleading notice by including the medical hardship language in a disclosure discussing alternative standards while leading participants to believe they could qualify only for an alternative if it was "medically inadvisable" or "unreasonably difficult" to quit. Instead, Defendant's materials conveyed that participants could obtain non-tobacco user rates only by identifying as non-users of tobacco or vapor products, presenting cessation as the sole path to relief and omitting any meaningful explanation of alternative eligibility.

78. Defendant's Plan materials also failed to include the required statement that recommendations of a participant's personal physician would be accommodated in determining a reasonable alternative standard. *See* Ex. A at 12; Ex. B at 9. These notice failures independently violate ERISA's wellness program regulations, which require that all plan materials describing a health-contingent wellness program clearly disclose the availability of a reasonable alternative standard that entitled the participant to a full reward upon satisfaction of that standard *and* a physician-accommodation statement advising participants that their physician can be involved in the development of an alternative standard. Upon information and belief, Defendant distributed other participant-facing communications describing or implementing the tobacco-related premium

32

differential without including the required disclosures, further compounding these violations and precluding Defendant from invoking ERISA's wellness program safe harbor.

79.     Defendant's SPD should have informed participants of a *reasonable* alternative standard because the Departments made clear that this information must be in SPDs or Plan document; it should have provided contact information for accessing that standard; and it should have contained the physician-accommodation statement. The SPD contained none of this. Because core, participant-facing documents describing the premium differential contained deficient and misleading notice, the tobacco surcharge program fails to satisfy the notice requirements necessary to qualify for ERISA's safe-harbor protection.

80.     Defendant's imposition of the tobacco surcharge therefore constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

81.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

**COUNT III**
**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

33

82. Plaintiff re-alleges and incorporates herein by reference allegations 1–67 of this Complaint.

83. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

84. Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset the company's own contribution obligations. These surcharges were collected as before tax deductions, alongside other contributions to the Plan, and thus were Plan assets from the moment of collection. Defendant breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce its own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) O'Reilly's contribution amount, and (3) the surcharge itself. But Defendant used the surcharge amounts to offset its own contributions shifting the costs associated with the Plan from itself to participants like Plaintiff. Upon information and belief, O'Reilly further profited by retaining additional monies in its own accounts, earning a float, and failing to remit the full employer contribution owed to the Plan.

34

85. Year after year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and administration of the Plan and its surcharge programs, including the decision not to offer a compliant wellness program or compliant communications. Defendant exercised discretionary authority by deciding how surcharge proceeds were handled, funneling the surcharge funds indirectly into its own general accounts. Upon information and belief, Defendant also determined how to handle the surcharge proceeds. It also decided not to offer reasonable alternative standards that would have enabled "all similarly situated individuals" to receive the same full reward for the entire plan year. Upon information and belief, Defendant controlled and disseminated to all employees the benefit guides and other Plan communications, including the SPD, discussing the premium differential but failed to notify them of all the ways by which they could avoid the entire year of surcharges. Defendant further failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications to participants, to ensure compliance with ERISA and its regulations. Instead, it allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

86. The Plan documents establish that Defendant was not a passive settlor merely designing benefits. Rather, O'Reilly was the Plan Sponsor and Plan Administrator; the Plan was self-insured by O'Reilly; O'Reilly was responsible for payment of Plan benefits; and the cost of the Plan was shared by employee and employer contributions. O'Reilly therefore exercised discretionary authority and control over Plan administration and over the collection, disposition,

35

and use of participant contributions, including the tobacco surcharge amounts deducted from participants' wages.

87.     Because the Plan was self-funded, Defendant's collection of additional participant contributions through the tobacco surcharge reduced the amount O'Reilly otherwise had to contribute to satisfy the Plan's benefit and administrative obligations. Upon information and belief, O'Reilly's funding obligation was equal to the amount by which Plan claims and administrative expenses exceeded participant contributions and other Plan resources. By increasing participant contributions through an unlawful tobacco surcharge, O'Reilly lessened its own contribution obligation, preserved corporate cash, and received the economic benefit of the surcharge amounts and any associated float, interest, or investment return.

88.     Despite being unlawful for the reasons alleged above, once Defendant withheld the surcharge amounts from participants' wages as Plan contributions, O'Reilly was required to use those funds solely for Plan purposes and to administer them prudently and loyally. Instead, upon information and belief, O'Reilly retained, diverted, used, or accounted for those amounts in a manner that benefitted O'Reilly by commingling the funds with its own general assets and offsetting its own payment and funding obligations, rather than restoring the amounts to participants, increasing Plan assets, or otherwise preserving the money for the exclusive benefit of the Plan and its participants.

89.     Defendant also breached its fiduciary duties by failing to maintain compliant Plan documents and participant communications; failing to monitor whether the tobacco surcharge program complied with ERISA's wellness program requirements; failing to implement a mechanism for participants to receive retroactive credits or reimbursements when they satisfied an alternative standard; failing to disclose the physician-accommodation right in all required

36

materials; and failing to correct payroll and administrative systems that continued to collect unlawful surcharges.

90. Defendant further breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by permitting surcharge funds to reduce its own contribution obligations or shift the burden of financing from the company to participants. Defendant maintained a surcharge without making available a reasonable alternative standard that made available the full reward to all similarly situated individuals and, if it did, it failed to notify participants of that or of their rights under the Final Regulations to have a physician included in the process. These omissions and misrepresentations are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law. ERISA imposes the duty to monitor and supervise the program's design, the disposition of surcharge proceeds, and the accuracy of participant communications. Defendant failed to periodically review these materials, despite its obligation to ensure the Plan's ongoing compliance with federal law.

91. Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, O'Reilly caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). O'Reilly is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

92. By retaining the amounts of the tobacco surcharges, O'Reilly increased its own corporate assets and saved the money it would otherwise have had to contribute to the Plan and shifted financial responsibility to fund the Plan from itself to the participants. In doing so, it dealt

with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, O'Reilly's contributions. By retaining and misusing the surcharges, O'Reilly benefitted from the float at the expense of the Plan and its participants, leaving the Plan with less than what it should have received under its governing documents.

93. Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to offer a *reasonable* alternative standard that makes available the "full reward" to participants; failing to properly disclose material information about participants' rights under the wellness program—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for years, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Defendant. Had Defendant complied with its fiduciary duties, it would have noticed the deficiencies in its program, communications, and use of funds, and it would have taken steps to correct the behavior.

94. As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks. Defendant's breaches caused the Plan to suffer concrete, measurable losses, including: (a) the aggregate amount of tobacco surcharges withheld from participants but used to offset Defendant's contribution obligations rather than augment the Plan's asset base; (b) the float and interest earned by Defendant on those Plan assets; (c) the reduction in the Plan's asset base attributable to the

38

diversion; and (d) the resulting higher participant contributions and reduced Plan reserves in subsequent Plan years.

95. Plaintiff's pleading of the elements of a prohibited transaction under 29 U.S.C. § 1106(a) and (b) shifts the burden of persuasion to Defendant to establish any applicable § 408 exemption. *See Cunningham*, 604 U.S. at 704. No such exemption applies to Defendant's use of participant-contributed Plan assets to reduce its own contribution obligations.

96. Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## <u>COUNT IV</u>
### BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

97. Plaintiff re-alleges and incorporates herein by reference allegations 1–67 of this Complaint.

98. At all relevant times, Defendant was an administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

99. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of

loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 272 n.8.

100. Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to benefit itself, to the detriment of Plaintiff and other similarly situated individuals, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks. Year after year, Defendant administered a noncompliant Plan and wellness program. Defendant administered the Plan by exercising discretionary authority over how surcharge proceeds were handled, whether participants would receive the "full reward," and by communicating with participants about their rights under the Plan.

101. Upon information and belief, Defendant controlled and disseminated to all employees the benefit guides and other Plan communications discussing the premium differential but failed to notify them of all the ways by which they could avoid the entire year of surcharges. Defendant further failed to conduct periodic or prudent reviews of the surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, Defendant allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

102. Defendant breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Defendant acted disloyally by using ill-gotten funds to shrink its own financial contributions. Defendant also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

103. These fiduciary breaches also caused individualized harm to Plaintiff and the Class. Participants were deprived of material information necessary to avoid the surcharge, were not told that they could obtain the same full reward through a reasonable alternative standard, and had money deducted from their paychecks that should not have been taken or should have been restored once they qualified for the reward. Defendant's fiduciary misconduct therefore injured participants directly, apart from and in addition to the Plan-level harm caused by O'Reilly's self-dealing use of participant contributions to reduce its own funding obligations

104. As a result of the unlawful surcharges, Defendant caused the Plan to enrich the company at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, Defendant secured financial savings for itself while participants bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year, and Defendant's communications failed to disclose participants' rights to a reasonable alternative standard. In this way, Defendant transformed what should have been an employer-funded plan contribution into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

105. Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce the company's financial obligations to the Plan, Defendant engaged in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). O'Reilly is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

41

106. By retaining the amounts of the tobacco surcharges, Defendant increased its own corporate assets.

107. Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for years, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Defendant. Had Defendant complied with its fiduciary duties, it would have noticed the deficiencies in the program and taken steps to correct the behavior. More importantly, they would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

108. Plaintiff's pleading of the elements of a prohibited transaction under 29 U.S.C. § 1106(a) and (b) shifts the burden of persuasion to Defendant to establish any applicable § 408 exemption. *See Cunningham*, 604 U.S. at 704. No such exemption applies to Defendant's use of participant-contributed Plan assets to reduce its own contribution obligations.

109. As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

110. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek individual equitable relief necessary to redress Defendant's fiduciary breaches, including but not

42

limited to restitution, surcharge, disgorgement, a constructive trust over improperly retained funds, and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

43

F. Declaratory relief as necessary and appropriate, including an Order that Defendant's program was unlawful and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L. An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: June 8, 2026

Respectfully submitted,

/s/ *Oren Faircloth*

**SIRI & GLIMSTAD LLP**
Oren Faircloth (*pro hac vice*)
William H. Payne (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: (929) 677-5181
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

**POSPISIL SWIFT, LLC**
Michael D. Pospisil
1600 Genessee St., Ste. 340
Kansas City, Missouri 64102
Tel: (816) 895-6440
Fax: (816) 895-9161
mdp@pslawkc.com

*Attorneys for Plaintiff and the Proposed Class*