# IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF MISSOURI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN HATFIELD, on behalf of himself and all others similarly situated, | ) ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 6:26-3030-01-CV-S-SRB |
| | ) | |
| O'REILLY AUTOMOTIVE, INC., | ) | |
| *Defendant*. | ) | |

## O'REILLY AUTOMOTIVE, INC.'S SUGGESTIONS IN SUPPORT OF
## ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

Charles B. Cowherd Mo. Bar No. 27087
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Missouri 65804
Telephone:      417-888-1000
Facsimile:      417-881-8035
ccowherd@spencerfane.com

Michael S. Hines (*pro hac vice*)
Mary E. Grinman (*pro hac vice*)
Nicholle P. Knapp (*pro hac vice*)
**SKADDEN, ARPS, SLATE
   MEAGHER & FLOM LLP**
500 Boylston Street
Boston, Massachusetts 02116
Telephone:      617-573-4800
Facsimile:      617-573-4822
michael.hines@skadden.com
mary.grinman@skadden.com
nicholle.knapp@skadden.com

Dated:  July 1, 2026

*Counsel for Defendant*
*O'Reilly Automotive, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................... ii

PRELIMINARY STATEMENT...............................................................................................1

FACTUAL BACKGROUND ....................................................................................................1

STATUTORY AND REGULATORY BACKGROUND ..........................................................2

ARGUMENT ............................................................................................................................4

I.  PLAINTIFF LACKS ARTICLE III STANDING FOR CERTAIN CLAIMS ....................4

    A.  Plaintiff Lacks Standing To Assert
       A Claim For Deficient Notice (Count II)...............................................................4

    B.  Plaintiff Lacks Standing To Bring A Claim On
       Behalf Of The Plan For Breach Of Fiduciary Duty (Count III) ............................5

    C.  Plaintiff Lacks Standing To Assert A Claim For Prospective Relief ......................7

II.  THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM.............................8

    A.  Count I Should Be Dismissed For Failure To Allege A Statutory Violation............8

    B.  Count II Should Be Dismissed Because The Plan
       Provides Notice Of A Compliant Alternative Standard ..........................................9

       1.  O'Reilly's Plan Materials Adequately Disclose
          The Availability Of A Reasonable Alternative Standard.............................9

       2.  ERISA Does Not Require Plan Materials To Explicitly
          State That Physician Recommendations Will Be Accommodated ...........11

    C.  Counts III And IV Should Be Dismissed
       Because Plaintiff's Fiduciary Claims Are Not Viable ..........................................12

       1.  Plaintiff Does Not Plausibly Allege He Has
          Been Deprived Of Any Benefit Promised By The Plan............................13

       2.  O'Reilly Did Not Act As A Fiduciary With Respect To
          The Conduct Challenged In The First Amended Complaint ....................13

       3.  Plaintiff Does Not Allege A Prohibited Transaction Under ERISA ..........14

CONCLUSION.......................................................................................................................15

i

**CASES**                                                                                                     **PAGE(S)**

*Barrett v. O'Reilly Automotive, Inc.*,
    12 F.4th 1135 (8th Cir. 2024) ......................................................................................8

*Black v. Greater Bancorp. Exec. Supp. Comp. Benefits Plan*,
    2017 WL 8948732 (N.D. Cal. Jan. 18, 2017) ...............................................................15

*Campbell v. Galeno Chemical Co.*,
    281 U.S. 599 (1930)........................................................................................................10

*Chirinian v. Travelers Companies, Inc.*,
    2025 WL 2147271 (D. Minn. July 29, 2025).......................................................................7

*Cunningham v. Cornell University*,
    604 U.S. 693 (2025).........................................................................................................15

*Davis v. Morris-Walker, LTD*,
    922 F.3d 868 (8th Cir. 2019)..............................................................................................5

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...........................................................................................................8

*Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*,
    530 U.S. 238 (2000)........................................................................................................14

*Hekel v. Hunter Warfield, Inc.*,
    118 F.4th 938 (8th Cir. 2024)............................................................................................4

*Hutchins v. HP, Inc.*,
    737 F. Supp. 3d 851 (N.D. Cal. 2024) ............................................................................13

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
    552 U.S. 248 (2008)...........................................................................................................5

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996)........................................................................................................15

*Loren v. Blue Cross*,
    505 F.3d 598 (6th Cir. 2007) .............................................................................................1

*Matula v. Wells Fargo & Co.*,
    2025 WL 1707878 (D. Minn. June 18, 2025)...................................................................13

*Mehlberg v. Compass Group USA, Inc.*,
    2025 WL 1260700 (W.D. Mo. Apr. 15, 2025) .................................................................14

Case 6:26-cv-03030-SRB    Document 30    Filed 07/01/26    Page 3 of 22

*Midwest Special Surgery, P.C. v. Anthem Insurance Companies*,
2010 WL 716105 (E.D. Mo. Feb. 24, 2010) ................................................................9

*Noel v. Pepsico, Inc.*,
2026 WL 558118 (S.D.N.Y. Feb. 27, 2026) ..............................................................14

*Park v. U.S. Forest Service*,
205 F.3d 1034 (8th Cir. 2000) ................................................................................7, 8

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ...........................................................................................13, 14

*Plesha v. Ascension Health Alliance*,
2026 WL 279321 (E.D. Mo. Feb. 3, 2026) ...............................................4, 5, 13, 15

*Roth v. Sawyer-Cleator Lumber Co.*,
61 F.3d 599 (8th Cir. 1995) ......................................................................................6

*Smithville R-II School District. v. Riley*,
28 F.3d 55 (8th Cir. 1994) .......................................................................................11

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) ...................................................................................................4

*Tillery v. WakeMed Health & Hospitals*,
819 F.Supp.3d 442 (E.D.N.C. 2026) ......................................................................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...............................................................................................4, 5

*Trout v. Meijer*,
2026 WL 1098213 (W.D. Mich. Apr. 23, 2026) .....................................................12

*Williams v. Bally's Management Group, LLC*,
813 F. Supp. 3d 263 (D.R.I. 2025) ...........................................................................7

## STATUTES                                                                          PAGE(S)

29 C.F.R. § 2590.702(f) ...............................................................................3, 11, 12

29 U.S.C. § 1106 .......................................................................................2, 14, 15

29 U.S.C. § 1109 ....................................................................................................2, 5

42 U.S.C. § 300gg-4(j)(3)(E) ..................................................................2, 3, 9, 10

ERISA § 406 .............................................................................................2, 14, 15

ERISA § 408 ..............................................................................................................15

iii

**OTHER AUTHORITIES**                                                                      **PAGE(S)**

U.S. Dep't of Labor, Advisory Opinion 1994-31A (Sept. 9, 1994) ...................................................6

iv

Defendant O'Reilly Automotive, Inc. ("O'Reilly") respectfully moves to dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 25, the "FAC," cited as "¶__") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

On May 11, 2026, the Court ordered Plaintiff to file an amended complaint to address "the deficiencies of factual allegations in the Complaint, particularly regarding Counts I, III, and IV." (ECF No. 24, the "Order" at 2.) Thereafter, Plaintiff filed the FAC, which contains many additional words but no new factual allegations. (*See* Hines Decl. Ex. 1 (Redline Comparing Complaint and Amended Complaint.) Like the original complaint, the FAC does not "plead any facts that reflect [Defendant] failed to provide the full reward, including retroactive payment" because the paragraphs Plaintiff added to the FAC allege "deficiencies in notice, not any facts suggesting that Defendant failed to provide retroactive relief or otherwise withheld the full reward." (Order at 2, 3). Similarly, the "factual allegation deficiencies in Counts III and IV" identified by the Court in the first complaint persist in the FAC. (*Id*. at 3, n. 1.) Because Plaintiff has failed to remedy the dispositive deficiencies identified by the Court, the FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND

Under ERISA, employers have the option of establishing a welfare benefit plan by purchasing a "guaranteed benefit policy" from an insurance carrier that bears the financial risk of paying benefits. *See* 29 U.S.C. § 1101(b)(2)(B). Alternatively, an employer may sponsor a "self-insured" or "self-funded" plan by paying the health care costs of its covered employee participants with its own funds and participants' contributions rather than paying premiums to an insurance carrier. *See Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598, 601-02 (6th Cir. 2007). O'Reilly's employee welfare benefit plan (the "Plan"), is self-insured. (¶ 52.)

One of the many benefits offered by the Plan is a wellness program which promotes healthy lifestyles and prevents diseases by encouraging employees and their dependents to live tobacco free. (¶ 36.) Under the program, Plan participants certify in the enrollment system that they and their enrolled dependents do not use tobacco products. (*Id*.) Those that certify as such receive a 10% discount on their monthly medical premiums. (*Id*.) Conversely, Plan participants that cannot or do not make this certification do not receive the 10% discount. (*Id*.) Alternatively, Plan participants may qualify for the nontobacco use discount by contacting O'Reilly's benefits department to "develop[] an alternative to qualify for the discount." (*Id*.)

Plaintiff is a former O'Reilly employee and a former Plan participant who did not receive the nontobacco use discount while a Plan participant. (¶ 16.) Plaintiff purports to assert claims both "individually and on behalf of all other similarly situated individuals." (¶ 58.) The four counts in the FAC are all premised on the Plan's nontobacco use discount:

1. Counts I and II allege that O'Reilly unlawfully imposes a tobacco premium in violation of ERISA § 702, 29 U.S.C. § 1182(b) and Public Health Service Act ("PHSA") § 2705, 42 U.S.C. 300gg-4(j)(3)(D-E) (¶¶ 68-81);

2. Count III alleges on behalf of the Plan that O'Reilly breached fiduciary duties of loyalty and prudence under ERISA §§ 404 and 409 and engaged in prohibited transactions under ERISA § 406, 29 U.S.C. §§ 1104, 1106, 1109 (¶¶ 82-96);

3. Count IV mirrors Count III but seeks individual relief (¶¶ 97-110).

For the reasons below, all Counts should be dismissed as a matter of law.

## STATUTORY AND REGULATORY BACKGROUND

The requirements for programs of health promotion and disease prevention under ERISA are codified at ERISA §§ 702 and 715. 29 U.S.C. §§ 1182, 1185d. Section 702 prohibits employer-sponsored group health plans from discriminating "on the basis of any health status-related factor," but it expressly allows plans to "establish[] premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs

2

of health promotion and disease prevention" (i.e., "wellness programs").  *Id.* § 1182(b)(1), (b)(2)(B).  Section 715 incorporates the wellness plan provisions of the PHSA, 42 U.S.C. §300gg-4 (the "Wellness Statute").  *Id.* § 1185d.  Thus, an employee-sponsored wellness program must comply with the Wellness Statute to comply with ERISA.  Among other things, the Wellness Statute requires that a wellness program offer a "full reward" to all similarly situated individuals.  The requirement is satisfied where, in lieu of a specified outcome (e.g., cessation of tobacco use), the wellness program provides a "reasonable alternative standard" for participants for whom it is "unreasonably difficult due to a medical condition" or is "medically inadvisable" to achieve the outcome.  42 U.S.C. §300gg-4(j)(3)(D)(i)(I-II).  The Wellness Statute also contains a disclosure requirement: if plan materials "describ[e] the terms of the wellness program," the Wellness Statute requires those materials to also disclose "the availability of a reasonable alternative standard."  *Id.* § 300gg-4(j)(3)(E).  Conversely, where plan materials "disclose that such a program is available, without describing its terms," no specific disclosure is required.  *Id.*

Effective in 2014, the Department of Health and Human Services ("HHS"), along with the Department of Labor ("DOL"), released final regulations addressing employer wellness programs.  These regulations include 29 C.F.R. § 2590.702(f) (DOL regulation) and 45 C.F.R. § 146.121(f) (HHS regulation) (together, the "Wellness Regulation").  The Wellness Regulation includes requirements not provided for in the Wellness Statute, including by creating two categories of programs: (i) activity-only—for which the requirements parrot the Wellness Statute—and (ii) outcome-based—in which the Wellness Regulation creates new requirements not found in the Wellness Statute.  *Compare* 29 C.F.R. § 2590.702(f)(4)(v), *with* 42 U.S.C. § 300gg-4(j)(3)(E).  *See infra* Section II.B.1.

3

## I. PLAINTIFF LACKS ARTICLE III STANDING FOR CERTAIN CLAIMS

### A. Plaintiff Lacks Standing To Assert A Claim For Deficient Notice (Count II)

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). An ERISA plaintiff must allege (i) he suffered an injury that is concrete, particularized, and actual or imminent, (ii) that is traceable to defendant's conduct, and (iii) that the injury is redressable by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "The Supreme Court has rejected the idea that a bare 'statutory violation' is a 'concrete injury.'" *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 942 (8th Cir. 2024). A plaintiff must also have suffered a "concrete harm because of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426-27. Here, the FAC "primarily alleges 'purely informational injur[ies]' that do not satisfy Article III's concreteness requirement." *Plesha v. Ascension Health All.*, 2026 WL 279321, at *7 (E.D. Mo. Feb. 3, 2026).

According to Plaintiff, O'Reilly's disclosures violate the Wellness Regulation's notice requirements because the materials did not (i) "inform participants of a reasonable alternative standard during the Plan year that would entitle participants to the same premium relief afforded to non-tobacco users," (ii) "explain when or how any premium adjustment would be applied" or (iii) "include the required statement that recommendations of a participant's personal physician would be accommodated." (¶¶ 77, 78.) But the only "injury" Plaintiff alleges is a monetary loss traceable to his payment of the tobacco premium he purports was unlawfully imposed. (*See* ¶¶ 94, 109.) And "Plaintiff does not allege how Defendant's Plan disclosures caused h[im] to suffer these monetary injuries." *Plesha*, 2026 WL 279321, at *7. As the Court observed during

---

[1] Unless otherwise noted, all internal citations and alterations are omitted for the reader's convenience.

4

the May 11th hearing, "it doesn't seem like we know or at least connected the surcharge to the defective notice." (Hearing Transcript at 10:16-19.) Still true. Nowhere in the FAC does Plaintiff rectify that infirmity by identifying a concrete harm that is traceable to the alleged violations. "The cause of Plaintiff's increased expenses is not the notice given in the disclosures about the Plan, but the structure of the Plan itself." *Plesha*, 2026 WL 279321, at \*7. Accordingly, Plaintiff does not have Article III standing to proceed with Count II.

### B. Plaintiff Lacks Standing To Bring A Claim On Behalf Of The Plan For Breach Of Fiduciary Duty (Count III)

To establish Article III standing for his claim under ERISA § 409, Plaintiff must sufficiently allege (i) an injury in fact *to the Plan* that (ii) would likely be redressed by judicial relief. *See TransUnion*, 594 U.S. at 423. Under § 409(a), Plaintiff must show "losses to the plan," not losses to the individual plaintiff bringing suit. *See* 29 U.S.C. § 1109(a); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 261–62 (2008). Those losses must be concrete and particularized, not conjectural or hypothetical. *See Davis v. Morris-Walker, LTD*, 922 F.3d 868, 871 (8th Cir. 2019). Plaintiff alleges "upon information and belief" that O'Reilly "retained, diverted, used, or accounted for" the tobacco premiums by "commingling the funds with its own general assets and offsetting its own payment and funding obligations." (¶ 88.) Plaintiff further alleges that "Defendant's diversion of Plan assets caused measurable, dollar-for-dollar losses to the Plan." (¶ 55.) Those allegations fail to show concrete and particularized harm to the Plan for at least two independent reasons.

*First*, nothing in ERISA requires that employers establish a segregated funding arrangement for health and welfare plans. The DOL has made clear that:

> The provisions of Title I of ERISA do not impose funding standards on employee welfare benefit plans. Accordingly, the Department has acknowledged that an employer sponsor of a welfare plan may maintain such a plan without identifiable plan assets by paying plan benefits exclusively from the general assets of the

5

> employer.  This would be true even if the employer set aside some of its general assets in a segregated employer account for the purposes of providing benefits under the plan.

U.S. Dep't of Labor, Advisory Opinion 1994-31A (Sept. 9, 1994).  Conversely, the DOL *does* require segregated funding arrangements "if the employer establishes a trust on behalf of a plan, sets up a separate account with a bank or with a third party in the name of the plan, or specifically indicates in the plan documents or instruments that separately maintained funds belong to the plan."  *Id*.  Here, the FAC alleges the Plan is a self-funded welfare plan wherein O'Reilly withholds contributions from Plan participants on a pre-tax basis and pays Plan liabilities from a combination of participant and employer contributions.  (¶ 53.)  Nothing in the FAC nor the Plan documents attached thereto reflect a commitment by O'Reilly to maintain participant contributions in a separate trust.  Thus, to the extent Plaintiff relies on allegations that O'Reilly improperly commingled Plan assets—allegations including but not limited to "O'Reilly did not segregate the challenged tobacco surcharge amounts for the exclusive benefit of the Plan or use them to increase Plan assets" (¶ 54)—those claims fail as a matter of law.

*Second*, Plaintiff does not plausibly allege that the Plan was underfunded.  Determining whether a plan has suffered a loss requires "a comparison . . . between the value of the plan assets before and after the breach."  *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 603 (8th Cir. 1995).  Plaintiff reasons that "[h]ad the tobacco surcharge proceeds been treated, as ERISA and the Plan documents require, as a true third stream of Plan funding, the Plan's asset base would have grown commensurately."  (¶ 55.)  But that allegation makes no sense.  Neither ERISA nor Plan documents require "a true third stream of Plan funding."  (*Id*.)  Plaintiff himself alleges that "claims are . . . paid from a single, commingled funding pool consisting of participant contributions withheld through payroll deduction [Stream 1] and Defendant's contributions from its general assets [Stream 2]."  (¶ 53.)  Thus, the tobacco premium is paid

6

either by (i) Plan participants or (ii) O'Reilly.  It is either (i) withheld from Plaintiff's paycheck, or (ii) it is not, in which case the liability is assumed by O'Reilly.  Plaintiff does not explain *how* the Plan was injured by purportedly receiving contributions from Plaintiff instead of from O'Reilly.  Regardless of the source, the total sum paid into the Plan is the same, and Plaintiff does not plausibly allege otherwise.  *See Williams v. Bally's Mgmt. Grp., LLC*, 813 F. Supp. 3d 263, 273 (D.R.I. 2025), *appeal filed*, No. 25-2159 (1st Cir. Dec. 10, 2025) (dismissing nearly identical breach of fiduciary duty allegations as too "speculative" and "conclusory" to establish harm to the plan).

Plaintiff's allegations indicate, at most, that O'Reilly "engaged in conduct at the expense of individuals, not the Plan" because "even if collecting less money from Plan participants meant that [O'Reilly] would have to contribute more to the Plan, from a balance-sheet perspective, the Plan is no worse off." *Chirinian v. Travelers Companies, Inc.*, 2025 WL 2147271, at *12 (D. Minn. July 29, 2025).  In other words, any purported breach left the value of the Plan's assets in the same position had the breach not occurred.  "Eighth Circuit case law does not recognize such a breach to cause a 'loss to the plan' required to sustain a Section 1132(a)(2) claim."  (*Id.*)  Plaintiff does not have standing to proceed with Count III.

### C.       Plaintiff Lacks Standing To Assert A Claim For Prospective Relief

While Plaintiff struck the word "prospective" from the FAC's Prayer For Relief, Plaintiff nevertheless seeks remedies that are prospective in nature.  (*See* FAC at 45 (seeking "removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future").)  But as a *former* Plan participant, Plaintiff lacks standing to pursue that relief because he cannot allege a threat of "ongoing or future harm."  *Park v. U.S. Forest Serv.*, 205

7

F.3d 1034, 1037 (8th Cir. 2000); *see also* Hearing Transcript at 37:18-22 (Plaintiff himself conceded "the case law is pretty clear as a former employee, he can't get prospective relief.")

## II. <u>THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM</u>

An ERISA complaint "can only survive a motion to dismiss if it contains sufficient factual matter to state a facially plausible claim for relief." *Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1138 (8th Cir. 2024). In the ERISA context, a motion to dismiss is a particularly "important mechanism for weeding out meritless [ERISA] claims" and calls for "careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

### A. <u>Count I Should Be Dismissed For Failure To Allege A Statutory Violation</u>

Plaintiff alleges only one ground for a statutory violation: O'Reilly "d[oes] not provide retroactive reimbursement to participants who complete[] the standard." (¶ 36.) But, just like Plaintiff's original complaint, the FAC "contain[s] no factual allegations supporting Plaintiff's assertion." (Order at 2.) To be sure, the FAC contains new paragraphs, but those new paragraphs address only O'Reilly's purported failure to disclose its retroactive reimbursement policy in Plan materials. For example, Plaintiff alleges that "the Plan's documents independently fail the full reward requirement because they do not disclose, and do not provide, retroactive reimbursement." (¶ 37; *see also* ¶¶ 35, 36, 72, 73.) But neither the Wellness Statute nor the Wellness Regulation require plans to disclose information about retroactive reimbursement in plan documents, and even if such disclosure was required, failure to *disclose* does not support a claim that O'Reilly failed to *provide*. As the Court previously explained, these are "allegations regarding deficiencies in notice, not . . . facts suggesting that Defendant failed to provide retroactive relief or otherwise withheld the full reward." (Order at 3.) Plaintiff's claim that O'Reilly "d[oes] not provide retroactive reimbursement to participants who complete[] the

8

standard" is otherwise supported solely, and impermissibly, "[u]pon information and belief." (*See* ¶ 36.) Claims based only upon "'information and belief' are insufficient to survive a motion to dismiss." *Midwest Special Surgery, P.C. v. Anthem Ins. Companies*, 2010 WL 716105, at *8 (E.D. Mo. Feb. 24, 2010). Accordingly, Count I fails as a matter of law and should therefore be dismissed.

### B. Count II Should Be Dismissed Because The Plan Provides Notice Of A Compliant Alternative Standard

Count II asserts that the Plan fails to offer a compliant wellness program because O'Reilly does not sufficiently notify Plan members (i) about the availability of a reasonable alternative standard or (ii) that personal physician recommendations will be accommodated. (¶¶ 76-78.) Both allegations fail because O'Reilly's disclosures comply with the Wellness Statute.

### 1. O'Reilly's Plan Materials Adequately Disclose The Availability Of A Reasonable Alternative Standard

The Wellness Statute expressly states that a "wellness program *shall not violate* this section" if the plan complies with the statute's requirements. 42 U.S.C. § 300gg-4(j)(3) (emphasis added). The statute requires that "[t]he plan or issuer involved shall disclose in all plan materials describing the terms of the wellness program the availability of a reasonable alternative standard (or the possibility of waiver of the otherwise applicable standard) required under subparagraph (D)." *Id*. at § 300gg-4(j)(3)(E). Subparagraph (D), in turn, provides:

> **(i)** The reward is not available to all similarly situated individuals for a period unless the wellness program allows—
>
> **(I)** for a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual for whom, for that period, it is unreasonably difficult due to a medical condition to satisfy the otherwise applicable standard; and
>
> **(II)** for a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual for whom, for that period, it is medically inadvisable to attempt to satisfy the otherwise applicable standard.

9

42 U.S.C. § 300gg-4(j)(3)(D)(i)(I-II) (emphasis added).  Thus, under the Wellness Statute, plan

materials must disclose the availability of a reasonable alternative standard for any individual

who is unable to meet the standard for medical reasons.  Here, the Plan complies with the

Wellness Statute by expressly notifying participants that:

> **Important Notice:** If it is unreasonably difficult due to a medical condition to achieve the standards for the discount under this program, or if it is medically inadvisable to attempt to achieve the standards for the discount under this program, call us at **800-471-7431 option 3**, or **ext. 1387**, and we will assist in developing an alternative to qualify for the discount.

(¶ 39 (emphasis added).)  Notwithstanding that O'Reilly's disclosure expressly tracks the

Wellness Statute, Plaintiff nevertheless argues that "by including the medical hardship language

in a disclosure discussing alternative standards," O'Reilly's disclosure is "misleading" because it

purports to violate alleged requirements of the Wellness Regulation.  (¶ 77.)  Of course, that

cannot be.  To be sure, while the Wellness Statute permits agencies to "promulgat[e] regulations

in connection with" the Statute (42 U.S.C. § 300gg-4(n)), those regulations "may not extend a

statute or modify its provisions."  *Campbell v. Galeno Chem. Co.*, 281 U.S. 599, 610 (1930).  Yet

that is exactly what the Wellness Regulation does here by creating two categories of wellness

programs—(i) activity-only and (ii) outcome-based—only one of which hews to the Statute.  The

Wellness Regulation's requirements for activity-only programs track the Wellness Statute by

requiring alternatives for individuals with specific medical needs:

> (A) Under this paragraph (f)(3)(iv), a reward under an activity-only wellness program is not available to all similarly situated individuals for a period unless the program meets both of the following requirements:
>
> (1) The program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual for whom, for that period, it is unreasonably difficult due to a medical condition to satisfy the otherwise applicable standard; and
>
> (2) The program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual for whom, for that period, it is medically inadvisable to attempt to satisfy the otherwise applicable standard.

29 C.F.R. § 2590.702(f)(3)(iv) (emphasis added).  But for outcome-based programs, the Wellness

Regulation requires that the reasonable alternative standard be made available to *anyone* who

does not initially qualify:

> (A) Under this paragraph (f)(4)(iv), a reward under an outcome-based wellness program is not available to all similarly situated individuals for a period unless the program allows a reasonable alternative standard (or waiver of the otherwise applicable standard) for obtaining the reward for any individual who does not meet the initial standard based on the measurement, test, or screening, as described in this paragraph (f)(4)(iv).

29 C.F.R. § 2590.702(f)(4)(iv) (emphasis added).  Thus, an outcome-based program where the

alternative is available only to individuals with a medical need complies with the Wellness

Statute but violates the Wellness Regulation.  That is not a difference in detail; it is an

irreconcilable conflict.  Where, as here, "the agency's interpretation is inconsistent with the plain

language of a statute," the "regulation must yield to the statute."  *Smithville R-II Sch. Dist. v.*

*Riley*, 28 F.3d 55, 57-58 (8th Cir. 1994).  Because O'Reilly's disclosure complies with the

Wellness Statute, Count II fails as a matter of law.

### 2. ERISA Does Not Require Plan Materials To Explicitly State That Physician Recommendations Will Be Accommodated

Moreover, even if the Wellness Regulation were enforceable, the Plan's disclosures do

not violate it because the Regulation does not require Plan materials state verbatim that physician

recommendations will be accommodated.  For example, the sample disclosure language in the

Wellness Regulation, which "can be used to satisfy the notice requirement[s] of" the Regulation,

does not include the explicit statement that recommendations of an individual's personal

physician will be accommodated.  29 C.F.R. § 2590.702(f)(6).[2]  As the court reasoned in *Trout v. Meijer, Inc.*:

> The regulation ensures that employees receive essential information about their employers' health care plans.  It is reasonable in that context for the mandated disclosure to be slightly more general than the underlying substantive requirement.  While it might be more accurate for the employer to disclose to its employees that 'the recommendations of your personal physician will be accommodated insofar as they indicate it would be unreasonably difficult or medically inadvisable to complete the wellness program,' the more straightforward language required by the regulation achieves the same goal: informing employees that the wellness program will accommodate their individual medical needs.

2026 WL 1098213, at *8 (W.D. Mich. Apr. 23, 2026).  Here, by informing Plan participants that an alternative is available for those with medical conditions or for whom it is medically inadvisable, O'Reilly's disclosure *does* disclose that physician recommendations will be accommodated.  Because from whom would such medical advice come if not from a personal physician?

**C.**   **Counts III And IV Should Be Dismissed
Because Plaintiff's Fiduciary Claims Are Not Viable**

The "Court agree[d] with Defendant that," as originally pled, "there [we]re factual allegation deficiencies in Counts III and IV."  (Order at 3, n. 1.)  That remains true.  Accordingly, Counts III and IV should be dismissed for at least three reasons.

---

[2]     The sample disclosure language, which "can be used to satisfy the notice requirements of" the Wellness Regulation, is:  "Your health plan is committed to helping you achieve your best health.  Rewards for participating in a wellness program are available to all employees.  If you think you might be unable to meet a standard for a reward under this wellness program, you might qualify for an opportunity to earn the same reward by different means.  Contact us at [insert contact information] and we will work with you (and, if you wish, with your doctor) to find a wellness program with the same reward that is right for you in light of your health status."  29 C.F.R.§ 2590.702(f)(6).  This aligns with what the Plan provides.  (¶ 39.)

12

### 1. Plaintiff Does Not Plausibly Allege He Has Been Deprived Of Any Benefit Promised By The Plan

Defendant cannot have breached a fiduciary duty as long as Plaintiff received everything promised to him by the Plan. *See Plesha v. Ascension Health All.*, 2026 WL 279321, at *8 (E.D. Mo. Feb. 3, 2026) (dismissing tobacco premium claims holding, "[d]efendant cannot have breached any fiduciary duty to the [p]lan because the [p]lan complies with ERISA"); *Tillery v. WakeMed Health & Hosps.*, 819 F.Supp.3d 442, 453 (E.D.N.C. 2026) (rejecting plaintiff's "suggest[ion] that failing to provide [her] a benefit greater than she is entitled to under the [p]lan creates an inference of disloyalty"). This is because ERISA "does no more than protect the benefits which are due to an employee under a plan." *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024). Plaintiff alleges O'Reilly "breached its fiduciary duties by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce its own costs." (¶ 84.) But O'Reilly never promised any specific contribution amount to the Plan and, as explained *supra* Section II.A and II.B, O'Reilly's tobacco wellness program is compliant with ERISA. It is not enough to allege that O'Reilly profited; Plaintiff must also allege that those profits rightfully belonged to the Plan. Plaintiff's theory of liability thus "improperly extend[s] the protection of ERISA beyond its statutory framework." *Hutchins*, 737 F. Supp. 3d at 863; *see also Matula v. Wells Fargo & Co.*, 2025 WL 1707878, at *3 (D. Minn. June 18, 2025) (rejecting plaintiff's "attempt to seek extra payments that he was not promised under the [p]lan"), *appeal filed*, No. 25-2441 (8th Cir. July 22, 2025).

### 2. O'Reilly Did Not Act As A Fiduciary With Respect To The Conduct Challenged In The First Amended Complaint

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when

13

taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Here, the "action subject to complaint" is the adoption of O'Reilly's tobacco wellness program, not its implementation. It is well established that adoption of a plan is a settlor act, not a fiduciary one. *Mehlberg v. Compass Group USA, Inc*, 2025 WL 1260700, at \*7 (W.D. Mo. Apr. 15, 2025). Plaintiff argues that "[h]e challenges how Defendant administered, implemented, and communicated" O'Reilly's tobacco wellness program, "which is fiduciary conduct." (Opp. at 11.) But Plaintiff "merely accuse[s] Defendants of carrying out the Plan as written, rather than of improperly executing discretionary functions." *See Noel v. Pepsico, Inc.*, 2026 WL 558118, at \*13 (S.D.N.Y. Feb. 27, 2026) (holding, "the distinction between creation (a settlor function) and implementation (a fiduciary function) is illusory where the [plaintiff] alleges only that a discriminatory wellness program was implemented as created"). The FAC does not identify any difference between O'Reilly's creation of the tobacco wellness program and its "implement[ation]" of it. Accordingly, O'Reilly acted as a settlor, not as a fiduciary.

### 3. Plaintiff Does Not Allege A Prohibited Transaction Under ERISA

Counts III and IV allege that O'Reilly engaged in prohibited transactions by using the Plan's assets (premiums paid by tobacco users) to reduce O'Reilly's contributions to the Plan. (¶¶ 106, 107, 109.) ERISA supplements the general fiduciary duty of loyalty by prohibiting fiduciaries from engaging in specified transactions that tend to threaten the financial integrity of plans. *See* 29 U.S.C. § 1106; *Harris Tr. and Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000). Prohibited transactions include those between a plan and a party in interest under § 406(a), and self-dealing transactions between a plan and a plan fiduciary under § 406(b). 29 U.S.C. § 1106. Under both provisions, Plaintiff fails to state a claim for at least two reasons.

*First,* to state a claim under § 406, a plaintiff must plead the existence of a transaction as contemplated by § 406. The FAC fails to allege such a transaction. The Supreme Court held that using plan assets to pay plan benefits is not the type of "transaction" enumerated in § 406. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 892-93 (1996). This is true even if plan assets are used to fund a benefit that the employer might otherwise fund. *See Black v. Greater Bancorp. Exec. Supp. Comp. Benefits Plan*, 2017 WL 8948732, at *8-9 (N.D. Cal. Jan. 18, 2017) (use of plan assets to fund a benefit that employer might otherwise fund was not a prohibited transaction).

*Second*, to state a claim under ERISA's prohibited transaction rules in § 406, defendants must have acted as fiduciaries with respect to the complained-of conduct. *See Lockheed*, 517 U.S. at 892. As discussed above, O'Reilly acted as a settlor and not a fiduciary in adopting the nontobacco use discount. *See Plesha*, 2026 WL 279321, at *9 (dismissing prohibited transaction claims related to tobacco discount program).

Citing to *Cunningham v. Cornell University*, 604 U.S. 693, 704 (2025), the FAC contends that "Plaintiff's pleading of the elements of a prohibited transaction under 29 U.S.C. § 1106(a) and (b) shifts the burden of persuasion to Defendant to establish any applicable § 408 exemption." (¶ 108.) But *Cunningham*'s holding—that to "state a claim under § 1106(a)(1)(C), a plaintiff need only plausibly allege the elements contained in that provision itself, without addressing potential § 1108 exemptions"—requires Plaintiff to have plausibly alleged at least "the elements contained in that provision." *Cunningham*, 604 U.S. at 693. For the reasons explained above (reasons entirely divorced from § 1108 exemptions), Plaintiff has failed to plausibly allege the elements required to state a claim, and the claim must be dismissed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the FAC should be dismissed with prejudice.

15

Dated:   July 1, 2026                              Respectfully submitted,


                                                   /s/ Michael S. Hines
                                                   Charles B. Cowherd Mo. Bar No. 27087
                                                   **SPENCER FANE LLP**
                                                   2144 E. Republic Road, Ste. B300
                                                   Springfield, Missouri 65804
                                                   Telephone:      417-888-1000
                                                   Facsimile:      417-881-8035
                                                   ccowherd@spencerfane.com

                                                   Michael S. Hines (*pro hac vice*)
                                                   Mary E. Grinman (*pro hac vice*)
                                                   Nicholle P. Knapp (*pro hac vice*)
                                                   **SKADDEN, ARPS, SLATE
                                                     MEAGHER & FLOM LLP**
                                                   500 Boylston Street
                                                   Boston, Massachusetts 02116
                                                   Telephone:      617-573-4800
                                                   Facsimile:      617-573-4822
                                                   michael.hines@skadden.com
                                                   mary.grinman@skadden.com
                                                   nicholle.knapp@skadden.com

                                                   *Counsel for Defendant*
                                                   *O'Reilly Automotive, Inc.*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri, Southern Division, on this 1st day of July 2026, with notice of the case activity generated and sent electronically to all counsel of record.

Dated:  July 1, 2026                                    /s/ Michael S. Hines

17