|  |  |
|---|---|
| **JOHN HATFIELD**, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>**O'REILLY AUTOMOTIVE, INC.**<br><br>    Defendant. | **Civil Action No.: 6:26-cv-3030-01-S-SRB** |

**PLAINTIFF'S SUGGESTIONS IN RESPONSE
TO DEFENDANT'S MOTION TO DISMISS
<u>THE FIRST AMENDED CLASS ACTION COMPLAINT</u>**

      **POSPISIL SWIFT, LLC**
      Michael D. Pospisil
      1600 Genessee St., Ste. 340
      Kansas City, Missouri 64102
      Tel: (816) 895-6440
      Fax: (816) 895-9161
      mdp@pslawkc.com

      **SIRI & GLIMSTAD LLP**
      Oren Faircloth (*pro hac vice*)
      William H. Payne (*pro hac vice*)
      100 Pearl Street
      14th Floor - #16946876
      Hartford, CT 06103
      Main: (929) 677-5181
      E: ofaircloth@sirillp.com
      E: wpayne@sirillp.com

      ***Attorneys for Plaintiff and the Proposed Class***

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. THE AMENDED COMPLAINT AND GOVERNING STANDARD ....................... 3

III. ARGUMENT ............................................................................................... 4

A. The FAC Plausibly Alleges the Threshold Violation That O'Reilly Made No Compliant Alternative Available. .......................................................................... 4

    1. A Tobacco Program Must Offer an Alternative to Every Tobacco User, Not Only Those with a Medical Hardship. ...................................................... 4

    2. The Attached Materials Support a Concrete Inference That No Cessation Program Was Made Available. ................................................................. 5

    3. The Wellness Program Exception Is O'Reilly's Burden, Not A Pleading Obligation Plaintiff Must Satisfy With Secret Facts. ......................................... 6

B. *Mehlberg* and *Lipari-Williams* Do Not Require Plaintiff to Invent the Details of an Undisclosed Program. ............................................................................ 7

C. Even If an Undisclosed Alternative Existed, the Documents Plausibly Show That It Did Not Provide the Full Reward. ................................................................. 9

D. O'Reilly Cannot Turn Its Own Nondisclosure into a Pleading Defense. ................... 10

E. The Notice Claim Independently Requires Denial of the Motion. ............................ 11

F. The Amended Complaint Plausibly Alleges Fiduciary Conduct, Plan Loss, and Prohibited Transactions. ........................................................................ 12

    1. The Challenged Acts Are Administrative and Asset Handling, Not Just Plan Design. ................................................................................12

    2. The Self-Funded Structure Supplies a Concrete Plan Loss and Corresponding Employer Profit. ................................................................ 13

    3. The Prohibited Transaction Claim Satisfies *Cunningham*. ........................... 14

G. Plaintiff Has Standing for the Relief Sought. .................................................. 15

IV. CONCLUSION ........................................................................................... 15

ii

# TABLE OF AUTHORITIES

**Cases**

*Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*,
2025 U.S. Dist. LEXIS 190335 (W.D. Tenn. Sept. 26, 2025) ................................................ 14

*Baker v. 7-Eleven Inc.*,
No. 3:25-cv-01609, 2026 U.S. Dist. LEXIS 33855 (N.D. Tex. Feb. 19, 2026) .................. 6, 15

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ........................................................................................ passim

*Chirinian v. Travelers Co.*,
No. 24-cv-3956 (LMP/DTS), 2025 U.S. Dist. LEXIS 144669 (D. Minn. July 29, 2025) ....... 14

*Cunningham v. Cornell University*,
604 U.S. (2025) ........................................................................................................... 7, 14

*Leslie v. Rentokil N. Am., Inc.*,
No. 5:25-cv-01423, 2026 U.S. Dist. LEXIS 76558 (E.D. Pa. Apr. 8, 2026) ................. 2, 8, 12

*Lipari-Williams v. Mo. Gaming Co.*,
339 F.R.D. 515 (W.D. Mo. 2021) .................................................................................. passim

*Mehlberg v. Compass Grp. USA, Inc.*,
No. 24-cv-04179, 2025 U.S. Dist. LEXIS 84589 (W.D. Mo. Apr. 15, 2025) ................... passim

*Schultz v. Glens Falls Hosp.*,
No. 1:25-cv-00581, 2026 U.S. Dist. LEXIS 64968 (N.D.N.Y. Mar. 26, 2026) .................... 3, 8

*Silva v. Metropolitan Life Insurance Co.*,
762 F.3d 711 (8th Cir. 2014) ............................................................................................ 15

**Statutes**

29 U.S.C §502(a)(2) ......................................................................................................... 15
29 U.S.C. § 1106(a)(1)(D) and (b)(1) ................................................................................. 14
29 U.S.C. § 1109(a) ......................................................................................................... 14
29 U.S.C. § 1132(a)(2) ...................................................................................................... 15
29 U.S.C. § 1182(b)(1) ..................................................................................................... 6, 7
42 U.S.C. § 300gg-4(b)(1) ............................................................................................ 6, 9, 11

## Rules

Fed. R. Civ. P. 12(d) ........................................................................................................... 3
Fed. R. Civ. P. 8(d)(2).............................................................................................. 3, 10, 11
Rule 12(b)(6).......................................................................................................................... 3
Rule 8(d)(2).............................................................................................................. 9, 10, 15

## Regulations

29 C.F.R. § 2590.702(f)(1)(v)........................................................................................ passim
78 Fed. Reg. 33160 ......................................................................................................... 4, 9

## I. INTRODUCTION

The renewed motion asks the Court to treat O'Reilly's failure to identify a tobacco-cessation program as a failure of pleading. The opposite is true. The First Amended Complaint now attaches the participant-facing documents and alleges what those documents actually show: a binary, locked-in premium structure under which an employee either certifies tobacco nonuse and receives a 10% "Nontobacco Use Discount," or pays the higher rate for the Plan year. *See* Exs. A–B, Docs. 25-1 and 25-2. Those materials name no cessation program, identify no vendor or enrollment process, describe no completion standard, promise no midyear adjustment, and say nothing about returning surcharges already collected. The only language O'Reilly points to is a generic instruction to contact the employer if satisfying the standard is "unreasonably difficult due to a medical condition" or "medically inadvisable." That is a limited medical-hardship provision. It is not the generally available alternative that an outcome-based tobacco program must provide to every participant who fails the initial tobacco-free standard.

That distinction answers the concern raised at oral argument. *Mehlberg*, No. 24-cv-04179, 2025 U.S. Dist. LEXIS 84589 (W.D. Mo. Apr. 15, 2025) and *Lipari-Williams v. Mo. Gaming Co.*, 339 F.R.D. 515 (W.D. Mo. 2021) involved clearly identified cessation programs whose documents disclosed how the alternative operated, making it possible to allege directly that the programs withheld retroactive reimbursement. Here, O'Reilly has disclosed no program at all. Plaintiff cannot truthfully plead the mechanics of an undisclosed program, and Rule 8 does not require invention. He has instead pled the facts available to participants: O'Reilly imposed a health-factor premium differential; its enrollment materials locked elections for the year; its SPD and Benefit Guide identify no reasonable alternative standard available to all tobacco users; and no document

1

explains that completing an alternative produces the same full Plan-year reward. The absence of a program from the materials is not an evidentiary void. It is the violation alleged.

O'Reilly's position would create pleading immunity through nondisclosure because employers could omit the alternative from every participant-facing document, insist in a brief that a fully compliant program exists somewhere offstage, and then fault the participant for not describing its unseen terms. The Eighth Circuit rejected precisely that kind of inversion, holding that Rule 8 does not require a plaintiff to plead facts in the defendant's exclusive control, directly describe an undisclosed process, or rule out every lawful explanation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594–98, 601 (8th Cir. 2009). At most, O'Reilly's assertion that it secretly makes a program available and retroactively credits every surcharge creates a factual dispute for discovery. It is not a basis to dismiss allegations that must be accepted as true. Defendant could have attached a judicially noticeable document describing a retroactive reimbursement program or delivered such a document to Plaintiff, but as the record stands, the SPD and Benefits Enrollment Guide provide ample factual support for Plaintiff's well-pled claims.

The Amended Complaint ("FAC") also cures the other supposed deficiencies identified in the prior motion. It alleges document-specific notice violations, including the complete omission of the physician-accommodation statement; explains why the medically limited language does not satisfy the broader rule governing outcome-based programs; and pleads in detail how O'Reilly's self-funded structure allowed participant surcharges to replace employer contributions, leaving the Plan with fewer assets while O'Reilly retained the corresponding cash and float. FAC, ¶¶ 41–57, 91–110. Those allegations fit this Court's decisions in *Mehlberg* and *Lipari-Williams*, and the no-program theory was sustained earlier this year in *Leslie v. Rentokil N. Am., Inc.*, No. 5:25-cv-01423, 2026 U.S. Dist. LEXIS 76558, at *9 (E.D. Pa. Apr. 8, 2026) and *Schultz v. Glens Falls*

*Hosp.*, No. 1:25-cv-00581, 2026 U.S. Dist. LEXIS 64968, at *23–24 (N.D.N.Y. Mar. 26, 2026). The renewed motion should be denied.

## II.  THE AMENDED COMPLAINT AND GOVERNING STANDARD

The Court granted leave to amend after identifying the need for additional factual allegations concerning O'Reilly's alternative standard and the handling of surcharge proceeds. Doc. 24 at 2–4. The FAC responded with the governing SPD, the 2023 Benefits Enrollment Guide, and substantially more detail. It alleges two permissible alternative theories. First, O'Reilly did not make available a compliant reasonable alternative standard at all: the materials show only a tobacco-free outcome and a narrow medical-hardship inquiry, not a generally available cessation program. FAC, ¶¶ 34–47. Second, if O'Reilly proves that an undisclosed alternative existed, the Plan did not provide the full reward because its documents lock tobacco status for the Plan year, disclose no retroactive mechanism, and, on information and belief, participants who completed the hidden alternative were not reimbursed for surcharges already collected. *Id.* ¶¶ 35–39. Rule 8 expressly permits alternative and hypothetical pleading, and the pleading is sufficient if either theory is sufficient. *See* Fed. R. Civ. P. 8(d)(2).

On Rule 12(b)(6), the Court accepts the pleaded facts as true and draws every reasonable inference for Plaintiff. *Mehlberg*, 2025 U.S. Dist. LEXIS 84589, at *4. Plausibility is not probability, and a claim may proceed even if ultimate proof appears unlikely. *Braden*, 588 F.3d at 594. The pleading must be read as a whole, within ERISA's context as a remedial statute, including whether the missing details are controlled by the defendant. *Id*. at 597–98. A defendant cannot defeat plausibility by offering a competing factual narrative in its motion. *Id*. at 595–96. And when a motion relies on matters outside the pleadings, the Court must either disregard them or convert the motion and permit a reasonable opportunity for discovery. Fed. R. Civ. P. 12(d).

### III. ARGUMENT

**A. The FAC Plausibly Alleges the Threshold Violation That O'Reilly Made No Compliant Alternative Available.**

**1. A Tobacco Program Must Offer an Alternative to Every Tobacco User, Not Only Those with a Medical Hardship.**

Tobacco nonuse is an "outcome-based" standard because it requires a participant to attain or maintain a particular health outcome to receive a reward. 29 C.F.R. § 2590.702(f)(1)(v). An outcome-based program is lawful only if **all** regulatory conditions are met. *Id*. § 2590.702(f)(4). Most importantly here, the program must provide a reasonable alternative standard to "any individual" who does not meet the initial outcome and must make the "full reward" available to all similarly situated individuals. *Id*. § 2590.702(f)(4)(iv)(A). If the alternative is an educational program, the plan must make it available or assist the participant in finding it. *Id*. § 2590.702(f)(4)(iv)(C)(1).

The medical hardship language O'Reilly cites belongs to a different rule. Def. Br., 9–11. For an activity-only program—such as a walking requirement—a plan may limit the second alternative or waiver to persons for whom the activity is unreasonably difficult because of a medical condition or medically inadvisable. *Id*. § 2590.702(f)(3)(iv)(A). But an outcome-based program must furnish the first alternative to every person who misses the initial outcome, without requiring proof that tobacco nonuse is medically difficult or inadvisable. *Id*. § 2590.702(f)(4)(iv)(A), (E); 78 Fed. Reg. 33160 (must be offered "to a broader group"). Indeed, the regulation says it is "not reasonable" to require medical verification as a condition of providing the initial alternative to an outcome-based standard. *Id*. § 2590.702(f)(4)(iv)(E).

O'Reilly's documents use the narrower activity-only formulation. They tell participants to contact O'Reilly only when achieving the standard is medically difficult or medically inadvisable. FAC, ¶¶ 37, 43. They do not tell every participant being charged a tobacco surcharge that an

4

alternative is available. That textual mismatch is no technicality; it excludes the very population the outcome-based rule was written to protect: tobacco users who fail the initial standard but can participate in an alternative without claiming a medical disability. The FAC therefore pleads a violation on the face of the materials, before retroactivity is even reached.

### 2. The Attached Materials Support a Concrete Inference That No Cessation Program Was Made Available.

The FAC does not merely say "no program" in conclusory fashion. It identifies the documents participants received and the affirmative features missing from them. The Benefits Guide calls open enrollment the employee's "one opportunity" to make decisions for the year; states that elections remain effective through December 31; and prohibits midyear changes absent a qualifying life event. FAC, ¶ 35; Ex. B at 4. Its tobacco provision presents only an "either/or" certification tied to the 10% discount. FAC, ¶¶ 35–40. Neither the Guide nor the SPD names a smoking-cessation program, identifies a vendor, explains enrollment, sets a completion standard, states that participation and completion rather than actual cessation earns the discount, or explains when a completed alternative changes payroll deductions. FAC, ¶¶ 36–43. And neither states that amounts already collected will be returned. *Id*.

That matters because the regulation's tobacco example shows what "making available" means. A compliant plan tells smokers that it offers a cessation program; facilitates enrollment at a reasonable time and place; pays the cost; provides contact information; permits physician involvement; and allows any smoker to avoid the surcharge by participating, whether or not the smoker quits. 29 C.F.R. § 2590.702(f)(4)(vi), Example 6. A plan that merely tells an employee to find and pay for a program has not made a reasonable alternative available. *Id*. Example 8. O'Reilly's materials do less still; they do not identify any program to find.

The inference is strengthened by O'Reilly's treatment of a separate wellness incentive in the same Benefits Guide. For the preventive-visit and biometric-screening discount, O'Reilly included a formal "NOTICE REGARDING WELLNESS PROGRAM" describing the incentive and governing protections. FAC, ¶ 44. It included no comparable notice, program description, enrollment instruction, or alternative for the tobacco differential. *Id*. That supports an inference that O'Reilly knew how to communicate an operative wellness program when one existed and did not do so here. *Braden* requires that inference to be drawn for Plaintiff, not against him.

O'Reilly will presumably respond that a participant could call and a compliant program would materialize. But a phone number is not itself a wellness program. Nor does a medical-hardship invitation establish that O'Reilly made available an alternative to every tobacco user. The regulation permits a plan to tailor the precise alternative after a request, but it does not permit the plan to conceal the existence and availability of the alternative from the people entitled to request it. *See* 29 C.F.R. § 2590.702(f)(4)(iv)(B), (v). The FAC plausibly alleges that no compliant alternative was made available, and Count I survives on that ground alone.

### 3. The Wellness Program Exception Is O'Reilly's Burden, Not A Pleading Obligation Plaintiff Must Satisfy With Secret Facts.

The renewed motion also approaches the statutory structure backwards. ERISA begins with a categorical prohibition against requiring participants to pay different premiums based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1). Tobacco use is such a factor. *Id*. § 1182(a)(1)(A); 29 C.F.R. § 2590.702(a)(1); *see Baker v. 7-Eleven Inc.,* No. 3:25-cv-01609, 2026 U.S. Dist. LEXIS 33855, at *8–12 (N.D. Tex. Feb. 19, 2026). The wellness program provision is an exception to that prohibition, available only if the employer proves that its program satisfies *every* statutory and regulatory condition. § 1182(b)(2)(B); § 300gg-4(b)(2)(B). Thus, once Mr. Hatfield alleges that O'Reilly charged him more because of tobacco

6

status—and he does (FAC, ¶¶ 16, 34, 48)—the pleading states the prohibited differential. O'Reilly's contention that an undisclosed program nevertheless brings the surcharge within the exception is a justification based on facts exclusively within O'Reilly's possession.

The Supreme Court recently reaffirmed the proper allocation. In *Cunningham v. Cornell University*, 604 U.S. 693 (2025), the Court held that an ERISA plaintiff pleading a prohibited transaction need not anticipate and negate statutory exemptions; the fiduciary invoking an exemption must prove it. *Id*. at 700–05. The same principle applies here. Section 1182(b)(1) states the prohibition, while § 1182(b)(2)(B) separately permits a premium differential only through a program satisfying specified conditions. Requiring Mr. Hatfield to plead the details of O'Reilly's asserted exception would force him to disprove a defense before O'Reilly identifies the supposed program on which the defense rests. Neither Rule 8 nor ERISA imposes that burden on Plaintiff.

The Amended Complaint, moreover, does far more than merely rely on burden allocation. It attaches the documents O'Reilly gave participants and identifies the precise conditions those documents fail to satisfy: no alternative offered to every tobacco user, no cessation program, no enrollment path, no completion terms, no full reward mechanism, and no physician-accommodation statement. FAC, ¶¶ 34–47. Those allegations affirmatively plead noncompliance. What O'Reilly demands beyond them—internal program specifications, payroll-credit practices, and examples of how other participants were treated—is proof obtainable from O'Reilly, not information a participant must possess before discovery. *Braden*, 588 F.3d at 596–98, 601. The statutory exception therefore cannot support dismissal.

**B. *Mehlberg* and *Lipari-Williams* Do Not Require Plaintiff to Invent the Details of an Undisclosed Program.**

At oral argument, the Court noted that *Mehlberg* and *Lipari-Williams* contained direct allegations that the identified cessation programs did not reimburse earlier surcharges, but that

7

factual difference does not defeat this case; it explains why the allegations take a different form. In *Mehlberg* and *Lipari-Williams*, the defendants had disclosed an alternative and its operation, so the plaintiffs could identify the specific point at which the disclosed program withheld the full reward. *See Mehlberg*, 2025 U.S. Dist. LEXIS 84589, at *11–12 (W.D. Mo. Apr. 15, 2025) and *Lipari-Williams*, 339 F.R.D. at 522–23. Here, the failure is more fundamental because O'Reilly's materials identify no cessation program or generally available alternative at all. FAC, ¶¶ 34–48.

Nothing in either decision converts its facts into a pleading checklist. The statute and regulations ask whether a reasonable alternative was made available to every tobacco user and whether the full reward was made available to those who satisfy it. 29 C.F.R. § 2590.702(f)(4)(iii)–(iv). A complaint may plausibly allege failure at either step or failure to satisfy other requirements, such as notice. This Court recognized in *Mehlberg* that separate claims based on deficient notice and failure to provide the full reward could proceed concurrently. *Mehlberg*, at *11–18. Likewise, in *Lipari-Williams*, this Court treated the absence of compliant notice as an independent Plan-wide violation. 339 F.R.D. at 521–24.

*Leslie v. Rentokil* confirms the point in the closest factual setting. There, the plaintiffs alleged that the employer imposed a tobacco surcharge but offered "no smoking cessation program, waiver, or alternative route" and that the Plan documents omitted any reasonable alternative because none existed. *Leslie*, 2026 U.S. Dist. LEXIS 76558, at *9–10. The court denied the motion to dismiss. *Id*. at *36. *Leslie* did not require the plaintiffs to describe how a nonexistent or undisclosed program handled retroactive reimbursement. It recognized that allegations of no generally available program and no compliant notice state the threshold nondiscrimination claim. *Schultz*, 2026 U.S. Dist. LEXIS 64968, at *25–26 ("The glaring problem … is … there is no wellness program at all"). Plaintiff asserts the same allegations here.

The FAC also pleads the full reward theory in the alternative. It alleges that the Guide communicates a Plan-year lock; no document identifies a midyear credit or reimbursement mechanism; and, on information and belief, if O'Reilly contends an alternative existed, participants who completed it did not receive reimbursement of earlier surcharges. FAC, ¶¶ 35–39. That inference is permissible because the relevant payroll and reimbursement records reside exclusively with O'Reilly. *Braden*, 588 F.3d at 597–98, 601. Rule 8(d)(2) does not require Plaintiff to choose between "there was no program" and "any hidden program did not provide the full reward" before discovery establishes which is true.

### C. Even If an Undisclosed Alternative Existed, the Documents Plausibly Show That It Did Not Provide the Full Reward.

ERISA does not merely require some reduction in the surcharge after a participant completes an alternative. It requires that the participant be able to obtain "the full reward" offered for the Plan year. 42 U.S.C. § 300gg-4(j)(3)(D). The regulations make the point explicit: satisfying an alternative may take time, but the participant who does must receive "the same, full reward" as a person who met the initial standard. 78 Fed. Reg. at 33163. A hidden program that only stops future deductions would not satisfy that requirement.

The attached materials support the reasonable inference that O'Reilly did not provide that full Plan-year value. The Benefits Guide labels enrollment the employee's 'one opportunity' to select benefits and states that those elections remain in effect through December 31 and may be changed only upon a specified qualifying life event. FAC, ¶ 35; Ex. B at 4. The tobacco provision then presents the 10% discount as a binary certification made during that enrollment process. FAC, ¶¶ 35–40. Completing a cessation program is not identified as a qualifying event, and no provision says that payroll deductions will be changed midyear, that earlier deductions will be credited, or

9

that a participant may recover the discount for months preceding completion. FAC, ¶¶ 36–43. Read together, those provisions communicate a fixed annual premium, not a full reward process.

O'Reilly cannot obtain dismissal by isolating the generic medical-hardship sentence from that surrounding structure. Even assuming a call could lead to some individualized accommodation, the documents do not state that a generally available alternative earns the same 10% discount, when the discount begins, or whether O'Reilly returns surcharges already withheld. The Court must draw the reasonable inference from what the documents say and do not say. *Braden*, 588 F.3d at 595–98. The contrary proposition, that O'Reilly always issued complete retroactive credits, is a factual assertion requiring records (e.g., program communications, completion data, payroll adjustments, and reimbursement histories). Only O'Reilly has those records. Rule 8 permits allegations on information and belief when the operative facts are controlled by the defendant, and it permits inconsistent or alternative theories until discovery establishes which account is true. Fed. R. Civ. P. 8(d)(2); *Braden*, 588 F.3d at 597–98, 601.

Plaintiff alleges that O'Reilly did not make any generally available program known to participants, which explains why he could not describe a completion process. Requiring pled facts of non-reimbursement under a program O'Reilly never disclosed would make the more complete violation harder to plead than the lesser one.

### D. O'Reilly Cannot Turn Its Own Nondisclosure into a Pleading Defense.

The renewed motion does not address Plaintiff's allegations that O'Reilly failed to make a compliant wellness program available to every tobacco user or provide the full 10% discount retroactively. It simply labels those allegations insufficient. Def. Br., 8–9. But the attached SPD and Benefits Guide do not identify any written program, enrollment procedure, participant communication, payroll policy, or reimbursement mechanism showing that participants could obtain the full retroactive discount. At the pleading stage, O'Reilly cannot convert its own silence

10

on those factual allegations into a basis for dismissal. *Braden*, 588 F.3d at 595–98. If O'Reilly possesses materials establishing that a compliant alternative was universally available and that the full discount was applied retroactively, it may produce them in discovery and move on an evidentiary record. Their absence from the pleadings does not justify presuming that they exist.

*Braden* is especially instructive because the Eighth Circuit reversed dismissal where the district court demanded direct allegations about the fiduciaries' internal process and credited possible lawful explanations. *Id*. at 595–97. Rule 8, the Court held, permits indirect factual allegations and does not require a plaintiff to rebut facts controlled by the defendant. *Id*. at 596–98, 601. Otherwise, ERISA's remedial scheme would fail whenever the facts needed to prove the claim were held by the fiduciary accused of wrongdoing. *Id*. at 598, 600–01.

That reasoning applies with full force. Plaintiff has pled the observable facts: the premium differential, the before-tax deductions, the Plan-year lock, the binary certification, the medical-only language, and the complete absence of a disclosed program or reimbursement mechanism. FAC, ¶¶ 34–48. Those facts reasonably support the inference that O'Reilly did not make a compliant alternative or full reward available. O'Reilly's alternative story may be tested later. It cannot be adopted now merely because O'Reilly possesses information Plaintiff does not.

### E. The Notice Claim Independently Requires Denial of the Motion.

Count II does not depend on the Court's answer to the retroactivity question. *Every* material describing the terms of the program must disclose the availability of a reasonable alternative standard, provide contact information, and state that recommendations of the participant's personal physician will be accommodated. 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v). This Court applied that rule in *Mehlberg* and concluded "a legally deficient notice confers standing when coupled with an actual monetary loss." 2025 U.S. Dist. LEXIS 84589, at *10.

11

The FAC identifies each missing element. The Guide does not tell all tobacco users that an alternative is available, does not identify any alternative, and does not include the physician-accommodation statement. FAC, ¶¶ 37, 39–41; Ex. B at 9. The SPD repeats the medically limited language, gives no program-specific contact information, and likewise omits the physician statement and any entitlement to the same full reward. FAC, ¶¶ 42–43. These are document-level facts the Court can resolve from the exhibits themselves.

Plaintiff's injury is not informational; it is financial. Defendant deducted $780 annually from his paychecks under a surcharge imposed through a noncompliant wellness program. That is a concrete, out-of-pocket monetary injury sufficient to establish Article III standing. *See Leslie*, 2026 U.S. Dist. LEXIS 76558, at *18 ("at least two courts have concluded that a plaintiff need not show downstream consequences where, as here, Plaintiff is not alleging that the failure to notify injured her but is alleging that the failure to notify makes the surcharge itself illegal, thereby resulting in direct injury to Plaintiff").

O'Reilly cannot read the required physician accommodation into its medical-hardship sentence. The rule requires an affirmative statement that the recommendations of the participant's own physician "will be accommodated," including the opportunity to use those recommendations as a second reasonable alternative when appropriate. 29 C.F.R. § 2590.702(f)(4)(iv)(C)(4), (D)(2), (v). The attached materials say nothing of the sort. Because a surcharge is permissible only if ***all*** conditions are satisfied, this undisputed omission independently defeats the wellness program exception and preserves Count II even if O'Reilly ultimately proves a retroactive credit practice.

**F. The Amended Complaint Plausibly Alleges Fiduciary Conduct, Plan Loss, and Prohibited Transactions.**

    **1. The Challenged Acts Are Administrative and Asset Handling, Not Just Plan Design.**

12

The FAC does not just challenge the settlor decision to offer a tobacco incentive in the abstract. It challenges the acts O'Reilly took after adopting it, including drafting and disseminating participant communications, failing to review those communications and systems for compliance, and using surcharge proceeds within a self-funded Plan to reduce its own contribution obligation. FAC, ¶¶ 51–57, 91–107. Those are conduct-specific allegations concerning Plan administration and the disposition of Plan-related funds.

This Court refused to dismiss materially similar allegations in *Mehlberg*. The complaint there alleged that the employer took surcharge amounts, failed to deposit them into the Plan, used them to offset its own contributions, and profited at the Plan's expense. 2025 U.S. Dist. LEXIS 84589, at *18–20. This Court held those allegations sufficient to plead fiduciary status, prohibited transactions, and Plan loss. *Id*. This Court held similarly in *Lipari-Williams*, finding that the fiduciary claim was appropriate even if the Plan's total receipts remained unchanged. 339 F.R.D. at 526–27. The FAC now alleges the same economic mechanism in greater detail.

### 2. The Self-Funded Structure Supplies a Concrete Plan Loss and Corresponding Employer Profit.

The SPD states that O'Reilly self-insures the benefits, is responsible for payment, is both Plan Sponsor and Plan Administrator, and shares the cost with employees. FAC, ¶ 52; Ex. A at 98. The FAC alleges that claims are paid from a commingled funding pool of participant payroll contributions and O'Reilly's general assets. FAC, ¶¶ 51–53. In that structure, each additional participant dollar used to pay Plan claims reduces the cash O'Reilly must contribute by the same amount. FAC, ¶¶ 53–56. Rather than allowing the surcharge to boost Plan funding, O'Reilly used it as a substitute for employer funding, retained the resulting float, and left the Plan with a smaller asset base than it would have had if all three funding streams had been additive. *Id*.

As pled, that is both a loss to the Plan and a profit to the fiduciary. Section 1109(a) expressly requires a breaching fiduciary to make good Plan losses and restore profits made through use of Plan assets. 29 U.S.C. § 1109(a). *Lipari-Williams* rejected the same "no plan loss" argument because, absent the surcharge, the employer, not the participants, would have borne those costs. 339 F.R.D. at 527. *Mehlberg* likewise held that allegations that the employer kept surcharge proceeds to offset its own contributions were sufficient to support a claim for disgorgement. 2025 U.S. Dist. LEXIS 84589, at *20. The FAC plausibly alleges the economic injury; it need not prove the accounting at the pleading stage.

Defendant's reliance on *Chirinian v. Travelers Co.*, No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at *30–31 (D. Minn. July 29, 2025) is misplaced. There, the plaintiff alleged that surcharge proceeds were deposited into a "Plan trust," which the court saw as evidence that no loss occurred. Here, the FAC alleges the opposite: O'Reilly retained surcharge funds in its own accounts, offset its contributions, and earned interest. *See Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*, 2025 U.S. Dist. LEXIS 190335, at *56–57 (W.D. Tenn. Sept. 26, 2025) (plaintiff "sufficiently pleaded a harm to the Plan" where defendant retained surcharge funds to enrich itself).

### 3. The Prohibited Transaction Claim Satisfies *Cunningham*.

The FAC alleges that O'Reilly is a party in interest; exercised control over participant contributions and Plan funding; caused Plan assets to be used to reduce its own obligations; and dealt with those assets for its own account. FAC, ¶¶ 91–108. Those facts plead prohibited transactions and self-dealing under 29 U.S.C. § 1106(a)(1)(D) and (b)(1). O'Reilly's argument that the surcharge was lawful simply assumes that the exemption applies and places the burden on the wrong party. *Cunningham v. Cornell University* holds that a plaintiff need only plead the elements of § 1106(a)(1), while any § 1106 exemption is an affirmative defense for the fiduciary to prove. 604 U.S. at 701–04. The claim therefore cannot be dismissed because Plaintiff has not disproved

14

an exception or reconstructed O'Reilly's internal accounting before discovery. Count IV also properly seeks individual equitable relief in the alternative, including restitution, disgorgement, and a constructive trust, which Rule 8 permits. FAC, ¶¶ 103, 110. *See Silva v. Metropolitan Life Insurance Co.*, 762 F.3d 711, 726–27 (8th Cir. 2014).

### G. Plaintiff Has Standing for the Relief Sought.

Defendant argues that Plaintiff, as a former Plan participant, lacks standing for "prospective" relief. Def. Br., 7–8. This argument fails because Plaintiff's primary claims seek backward-looking equitable relief, including disgorgement and restitution under 29 U.S.C. §§ 1132(a)(2) and (a)(3). ERISA expressly authorizes participants, including former participants, to bring such claims on behalf of the Plan. *See* 29 U.S.C. § 1132(a)(2). To the extent any requested relief is prospective in nature, questions about the scope of available remedies go to class certification, not standing. *Baker*, 2026 U.S. Dist. LEXIS 33855, at *7 (holding that a former participant can "represent herself, the class, and the Plan itself to pursue Congress-authorized equitable relief" and that scope-of-relief questions "go[] to class certification, not standing").

### IV. CONCLUSION

The FAC pleads the case the documents permit Plaintiff to plead. Those documents show a tobacco-based premium differential, a locked Plan-year election, no identified cessation program, a medical-hardship sentence that does not extend an alternative to every tobacco user, no physician-accommodation statement, and no explanation of any full reward or reimbursement mechanism. If O'Reilly has evidence of a hidden program and retroactive payroll credits, it can produce that evidence. It cannot obtain dismissal by asking the Court to presume the very facts the Amended Complaint disputes and that O'Reilly alone controls. For these reasons, Defendant's renewed motion to dismiss should be denied in its entirety.

Dated: July 15, 2026

Respectfully submitted,

/s/ *Michael D. Pospisil*

**POSPISIL SWIFT, LLC**
Michael D. Pospisil
1600 Genessee St., Ste. 340
Kansas City, Missouri 64102
Tel: (816) 895-6440
Fax: (816) 895-9161
mdp@pslawkc.com

**SIRI & GLIMSTAD LLP**
Oren Faircloth (*pro hac vice*)
William H. Payne (*pro hac vice*)
100 Pearl Street
14th Floor - #16946876
Hartford, CT 06103
Tel: (929) 677-5181
E: ofaircloth@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*

16