# IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN HATFIELD, on behalf of himself and all others similarly situated, | ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Case No. 6:26-3030-01-CV-S-SRB |
| O'REILLY AUTOMOTIVE, INC. | ) ) | |
| *Defendant*. | ) | |

## O'REILLY AUTOMOTIVE, INC.'S REPLY SUGGESTIONS IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

Charles B. Cowherd Mo. Bar No. 27087
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Missouri 65804
Telephone:     417-888-1000
Facsimile:     417-881-8035
ccowherd@spencerfane.com

Michael S. Hines (*pro hac vice*)
Mary E. Grinman (*pro hac vice*)
Nicholle P. Knapp (*pro hac vice*)
**SKADDEN, ARPS, SLATE
    MEAGHER & FLOM LLP**
500 Boylston Street
Boston, Massachusetts 02116
Telephone:     617-573-4800
Facsimile:     617-573-4822
michael.hines@skadden.com
mary.grinman@skadden.com
nicholle.knapp@skadden.com

Dated: July 29, 2026

*Counsel for Defendant
O'Reilly Automotive, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

REPLY POINTS ........................................................................................................................2

I.  THE OPPOSITION FAILS TO ESTABLISH
    ARTICLE III STANDING FOR CERTAIN CLAIMS ........................................................2

    A.  The Opposition Fails To Establish Standing
        To Bring A Claim For Deficient Notice (Count II)...................................................2

    B.  The Opposition Fails To Establish Standing To Bring
        A Fiduciary Breach Claim On Behalf Of The Plan (Count III)...............................3

    C.  The Opposition Fails To Establish Plaintiff Has
        Standing To Seek Prospective Relief (Counts I-IV) ................................................4

II. THE OPPOSITION CONFIRMS THE FAC FAILS
    TO PLEAD *FACTS* SUFFICIENT TO DRAW A REASONABLE
    INFERENCE OF A PLAUSIBLE STATUTORY VIOLATION (COUNT I).....................4

III. THE OPPOSITION DOES NOT ESTABLISH
     ANY DEFICIENCIES IN O'REILLY'S TOBACCO
     WELLNESS PROGRAM DISCLOSURES (COUNT II).....................................................7

    A.  O'Reilly's References To A "Medical Condition"
        In Plan Disclosures Do Not Support A Statutory Violation ...................................7

    B.  ERISA Does Not Require O'Reilly To State
        That Physician Recommendations Will Be Accommodated ...................................8

IV. THE OPPOSITION FAILS TO SUPPORT PLAINTIFF'S
    BREACH OF FIDUCIARY DUTY CLAIMS (COUNTS III AND IV) .............................9

    A.  Plaintiff Does Not Dispute That His Fiduciary Breach
        Claims Cannot Proceed Absent A Statutory Violation Claim.................................9

    B.  The Opposition Fails To Establish That O'Reilly Acted As
        A Fiduciary With Respect To The Conduct Challenged In The FAC .....................9

    C.  The Opposition Ignores O'Reilly's Prohibited Transactions Arguments ..............10

CONCLUSION........................................................................................................................10

i

**<u>TABLE OF AUTHORITIES</u>**

**<u>CASES</u>** **<u>PAGE(S)</u>**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................... 6

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009)......................................................................................... 6

*Campbell v. Galeno Chemical Co.*,
    281 U.S. 599 (1930)......................................................................................................... 8

*Chirinian v. Travelers Companies, Inc.*,
    2025 WL 2147271 (D. Minn. July 29, 2025)....................................................... 4

*Cunningham v. Cornell University*,
    604 U.S. 693 (2025)............................................................................................. 6, 7, 10

*Harley v. Oliver*,
    539 F.2d 1143 (8th Cir. 1976) ................................................................................... 5

*In re Cannon*,
    277 F.3d 838 (6th Cir. 2002) .................................................................................... 3

*Leslie v. Rentokil North America, Inc.*,
    2026 WL 950490 (E.D. Pa. Apr. 8, 2026)......................................................... 6

*Lipari-Williams v. Missouri Gaming Company, LLC*,
    339 F.R.D. 515 (W.D. Mo. 2021)......................................................................... 10

*Mehlberg v. Compass Group USA, Inc.*,
    2025 WL 1260700 (W.D. Mo. Apr. 15, 2025) ................................................ 10

*Minnesota Telecom Alliance v. Federal Communications Commission*,
    175 F.4th 905 (8th Cir. 2026)................................................................................... 7

*Plesha v. Ascension Health Alliance*,
    2026 WL 279321 (E.D. Mo. Feb. 3, 2026).............................................. 2, 3, 9

*Schultz v. Glen Falls Hospital*,
    2026 WL 850332 (N.D.N.Y. Mar. 26, 2026) ................................................... 6

*Spencer v. Campbell Soup Company*,
    2026 WL 2111153 (D.N.J. July 22, 2026) ...........................................*passim*

*Thole v. U.S. Bank N.A.*,
 590 U.S. 538 (2020).........................................................................................................4

*United States v. Adair*,
 38 F.4th 341 (3d Cir. 2022)...........................................................................................8

*United States v. Jungers*,
 702 F.3d 1066 (8th Cir. 2013).......................................................................................8

*Williams v. Target Corp.*,
 2026 WL 2111339 (D. Minn. July 22, 2026)............................................................8, 9

**<u>RULES AND STATUTES</u>**                 **<u>PAGE(S)</u>**

29 C.F.R. § 2590.702(f) ....................................................................................................5, 8

29 U.S.C. § 1182(b)(1)-(2)..................................................................................................7

42 U.S.C. § 300gg-4(j)(3).....................................................................................................8

42 U.S.C. § 300gg-4(n).........................................................................................................8

iii

**PRELIMINARY STATEMENT**

The Opposition[1] largely ignores the substantive arguments made in the Moving Brief and fails to explain how the FAC addresses any of the fundamental—and fatal—deficiencies the Court identified in Plaintiff's first complaint. (*See* Order (ECF 24).) The Opposition instead asserts that Plaintiff "pled the facts available to participants" and "Rule 8 does not require invention." (Opp. at 1.) In other words, Plaintiff concedes he does not have factual support for his claims but asks the Court to nevertheless find a plausibly pled claim. The Court should decline that invitation.

As the Court observed during the May 11th hearing, plaintiffs in similar litigations before the Court "knew some very specific things" and Plaintiff does not "have those very specific things." (Hearing Transcript 26:7-10.) Plaintiff told the Court that he was "happy to amend the complaint with additional facts" (*id*. at 26:12-14), but the FAC adds no new facts. Instead, Plaintiff now argues that *O'Reilly* "could have attached a judicially noticeable document describing a retroactive reimbursement program or delivered such a document to Plaintiff." (Opp at 2.) That is not O'Reilly's burden, particularly when the Court identified for Plaintiff the most glaring difference between this case and others: "they had current employees" which "allowed them to get plan documents or other things." (Hearing Transcript 26:4-7.) Plaintiff knows nothing about O'Reilly's tobacco wellness program. Not because the information does not exist, but because he lacks personal knowledge about a tobacco cessation alternative that he never inquired about while working at O'Reilly.

---

[1] Capitalized terms not defined herein have the meanings set forth in Defendant's Suggestions In Support Of Its Motion To Dismiss Amended Class Action Complaint (ECF 30) ("Moving Brief," cited as "Mov. Br. at __"). Plaintiff's Suggestions In Response To Defendant's Motion To Dismiss (ECF 32) is referred to as the "Opposition" (cited as "Opp. at __").

The Opposition argues that the information Plaintiff needs is "exclusively within O'Reilly's possession."  (Opp. at 7, *see also id.* at 3, 10, 11.)  Not so.  Plaintiff conducted no investigation before filing this case and now seeks to avoid the burden of pleading a plausible claim.  Indeed, Plaintiff's counsel has filed more than 60 complaints across the country challenging tobacco wellness programs.  A court evaluating one such complaint recently held that the complaint "consists mostly of statutory recitations and legal conclusions with very few well-pled factual allegations.  More vexingly, the [complaint] conflates distinct legal theories relevant to the merits."  *Spencer v. Campbell Soup Co.*, 2026 WL 2111153, at *5 (D.N.J. July 22, 2026) (granting motion to dismiss).  So too here.  Each of the FAC's four Counts fail as a matter of law and, after now having two bites at the apple, should be dismissed with prejudice.

### REPLY POINTS

I. **THE OPPOSITION FAILS TO ESTABLISH ARTICLE III STANDING FOR CERTAIN CLAIMS**

A. **The Opposition Fails To Establish Standing To Bring A Claim For Deficient Notice (Count II)**

As explained in the Moving Brief, Plaintiff fails to allege that his claimed injury is traceable to O'Reilly's purportedly deficient notice.  (Mov. Br. at 4-5.)  The Opposition argues that "Plaintiff's injury is not informational; it is financial" because "Defendant deducted $780 annually from his paychecks."  (Opp. at 12.)  *That is exactly the point*.  As the Court observed during the May 11th hearing, "it doesn't seem like we know or at least connected the surcharge to the defective notice."  (Hearing Transcript at 10:16-19.)  "Plaintiff does not allege how Defendant's Plan disclosures caused h[im] to suffer these monetary injuries.  The cause of Plaintiff's increased expenses is not the notice given in the disclosures about the Plan, but the structure of the Plan itself."  *Plesha v. Ascension Health All.*, 2026 WL 279321, at *7 (E.D. Mo. Feb. 3, 2026); *see also Spencer*, 2026 WL 2111153, at *9 ("This Court agrees in full with t[he]

2

[*Plesha*] court's reasoning" on this issue.)  Simply put, Plaintiff does not plead Article III standing for Count II.

### B.  The Opposition Fails To Establish Standing To Bring A Fiduciary Breach Claim On Behalf Of The Plan (Count III)

The FAC attempts to plead loss to the Plan by conclusorily alleging that "O'Reilly did not segregate the challenged tobacco surcharge amounts for the exclusive benefit of the Plan or use them to increase Plan assets." (¶ 54.)  Now, faced with the fact that the "provisions of Title I of ERISA do not impose funding standards on employee welfare benefit plans" (*see* Mov. Br. at 5-6), the Opposition argues "it need not prove the accounting at the pleading stage."  (Opp. at 14.)  That misses the point; Plaintiff must establish Article III standing for Count III, including by plausibly alleging a loss to the Plan.  Neither the FAC nor the Opposition explain *how* the Plan was injured by purportedly receiving contributions from Plaintiff instead of from O'Reilly. The Opposition argues that "[r]ather than allowing the [premium] to boost Plan funding, O'Reilly [(1)] used it as a substitute for employer funding, [(2)] retained the resulting float, and [(3)] left the Plan with a smaller asset base than it would have had if all three funding streams had been additive.  As pled, that is both a loss to the Plan and [(4)] a profit to the fiduciary." (*Id.* at 13.)  Plaintiff's argument makes no sense:

1. Plaintiff does not identify anything unlawful about using premiums to offset O'Reilly's contributions to the Plan.  Indeed, that is entirely permissible.

2. There is no "resulting float." *See e.g.*, *In re Cannon*, 277 F.3d 838, 843 (6th Cir. 2002) ("'Float' refers to the artificial balance created due to delays in processing credits and debits to an account.").

3. Plaintiff does not (and cannot) explain how imposing premiums left the Plan with a smaller asset base.  Plaintiff does not dispute that there is no segregated funding requirement for health and welfare plans (*see* Mov. Br. at 5-6), and the Plan therefore has no specific "asset base."  Plaintiff does not plead (or argue) otherwise.

4. Whether or not the premium resulted in a "profit to the fiduciary" is irrelevant.  It is not enough to allege that O'Reilly profited; Plaintiff must also allege that those profits rightfully belonged to the Plan.

3

At bottom, Plaintiff does not allege a concrete injury to the Plan and consequently lacks standing as to Count III.

### C. The Opposition Fails To Establish Plaintiff Has Standing To Seek Prospective Relief (Counts I-IV)

As Plaintiff himself previously acknowledged: "the case law is pretty clear as a former employee, he can't get prospective relief." (Hearing Transcript at 37:18-22.) Yet Plaintiff, a former employee, seeks prospective remedies and now argues "questions about the scope of available remedies go to class certification, not standing." (Opp. at 15.) Not so. The Supreme Court has unequivocally established that there "is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020).[2] And because Plaintiff "personally lacks standing to seek prospective injunctive relief, []he cannot seek such relief on behalf of the Plan." *See Chirinian v. Travelers Companies, Inc.*, 2025 WL 2147271, at *4 (D. Minn. July 29, 2025).

### II. THE OPPOSITION CONFIRMS THE FAC FAILS TO PLEAD *FACTS* SUFFICIENT TO DRAW A REASONABLE INFERENCE OF A PLAUSIBLE STATUTORY VIOLATION (COUNT I)

The FAC does not contain factual allegations to permit the Court to draw the reasonable inference that O'Reilly failed to "provide a reasonable alternative standard that makes available the full reward to those who satisfy the alternative standard." (¶ 69; *see* Mov. Br. at 8-9.) Instead, the FAC "consists mostly of statutory recitations and legal conclusions." *Spencer,* 2026 WL 2111153, at *5. But whether "the Plan failed to provide a *compliant* reasonable alternative

---

[2] Plaintiff cites ERISA §§ 502(a)(2)-(3), claiming "ERISA expressly authorizes participants, including former participants, to bring such claims on behalf of the Plan." (Opp. at 15.) As another court recently explained, "Plaintiff is correct that he has a permissible cause of action under ERISA. . . . But Plaintiff is wrong to conflate Article III standing with 'statutory standing,' since Article III standing is a constitutional prerequisite to this Court's exercise of its jurisdiction. Thus, just because Plaintiff has a cause of action under federal law does not mean he has Article III standing." *Spencer,* 2026 WL 2111153, at *9, n.7. So too here.

standard and therefore is unlawful is not a factual allegation but a legal conclusion." *Spencer,* 2026 WL 2111153, at \*6. Once the legal conclusions are set aside, Count I is otherwise supported solely, and impermissibly, "[u]pon information and belief." (*See* ¶ 36.) Plaintiff's "conclusionary" allegations, which are "naked of any supporting facts," do "not state a claim upon which relief can be granted." *Harley v. Oliver*, 539 F.2d 1143, 1146 (8th Cir. 1976). Faced with this pleading deficiency, the Opposition claims for the first time that "O'Reilly has disclosed no program at all," and argues that "Plaintiff cannot truthfully plead the mechanics of an undisclosed program." (Opp. at 1.) This argument fails for at least two reasons.

*First*, as a threshold matter, the Opposition conflates the word "program" as used to describe a reasonable alternative standard (i.e., a tobacco cessation program), with the word "program" as used to refer to the Plan's 10% non-tobacco use discount (i.e., O'Reilly's tobacco wellness program). (*See* Opp. at 5-6.) But the terms are not interchangeable. For example, "Plaintiff alleges that O'Reilly did not make any generally available program known to participants, which explains why he could not describe a completion process." (Opp. at 10.) If Plaintiff's argument is that "O'Reilly did not make any [reasonable alternative standard] known to participants," that is correct and permissible. *See* 29 C.F.R. § 2590.702(f)(4)(iv)(B) (the Wellness Regulation is clear: "plans and issuers are not required to determine a particular reasonable alternative standard in advance of an individual's request for one.")[3] If Plaintiff's argument is that "O'Reilly did not make [its tobacco wellness program] known to participants," that is wrong on the face of the FAC. (*See* ¶¶ 39, 42.)

---

[3]     For this reason, Plaintiff's grievances about O'Reilly's disclosures, including that they "name no cessation program," "identify no vendor or enrollment process" and "describe no completion standard" are inapposite. (Opp. at 1, *see also id.* at 5, 7, 9-10, 15 (similar).) O'Reilly disclosed that an alternative was available. (*See* ¶¶ 39, 42.) O'Reilly was not required to determine, nor disclose the details of, a specific reasonable alternative standard in advance.

*Second*, the Opposition attempts to flip the pleading standard on its head.  Citing to *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), Plaintiff argues that "[p]lausibility is not probability, and a claim may proceed even if ultimate proof appears unlikely."  (Opp at 3.) But Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. Such is the case here.  Relying solely on allegations regarding deficient notice (Count II), the FAC merely recites the elements for Count I and concludes that the purported absence of information in O'Reilly's disclosures supports a "concrete inference that no cessation program was made available."  (Opp. at 5.)  While "the court must take the plaintiff's factual allegations as true," this "tenet does not apply [ ] to legal conclusions or 'formulaic recitation of the elements of a cause of action'; such allegations may properly be set aside."  *Braden*, 588 F.3d at 594.  A complaint states a plausible claim for relief only if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  The FAC does not contain sufficient factual content that would allow the court to infer that no reasonable alternative standard was made available.[4]

Relying on *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025), Plaintiff asserts that to successfully plead his claim, he need do no more than allege a premium differential for tobacco

---

[4]    The Opposition cites to *Leslie v. Rentokil N. Am., Inc.*, 2026 WL 950490 (E.D. Pa. Apr. 8, 2026) and *Schultz v. Glens Falls Hosp.*, 2026 WL 850332 (N.D.N.Y. Mar. 26, 2026) in support of their theory that no program exists.  (Opp. at 8-9.)  But in *Leslie*, the plaintiff alleged that all plan materials "fail[ed] entirely to mention the *availability* of a reasonable alternative standard."  2026 WL 950490, at *4 (emphasis added).  And in *Schultz*, the court reasoned that, "taking the allegations in the complaint as true, as the [c]ourt must[,] there is no wellness program at all." 2026 WL 950490, at *10.  Here, the allegations in the FAC contravene Plaintiff's new theory, and "Plaintiff cannot rewrite the [FAC] through the Opposition."  (Order at 2.)

users.  (Opp. at 7.)  *Cunningham* says no such thing.  *Cunningham* concerns only the prohibited transaction provisions of ERISA, which are structured as a "categorical bar" with "exemptions set forth in a different part of the statute."  *Cunningham*, 604 U.S. at 700-01.  ERISA § 702 has an entirely different structure.  § 702(b)(1) states a prohibition and § 702(b)(2)(B) states that "[n]othing in paragraph (1) shall be *construed* . . . to prevent a group health plan . . . from establishing premium discounts . . .  in return for adherence to programs of health promotion and disease prevention."  29 U.S.C. § 1182(b)(1)-(2) (emphasis added).  On its face, § 702(b)(2)(B) is a *construction* of the prohibition, not an *exemption* to it.  *Id.*  Accordingly, Count I fails as a matter of law and should be dismissed.

III.     **THE OPPOSITION DOES NOT ESTABLISH ANY DEFICIENCIES IN O'REILLY'S TOBACCO WELLNESS PROGRAM DISCLOSURES (COUNT II)**

   A.     **O'Reilly's References To A "Medical Condition" In Plan Disclosures Do Not Support A Statutory Violation**

O'Reilly's disclosures comply with the requirements of the Wellness Statute, including that Plan materials disclose the availability of a reasonable alternative standard for any individual who cannot meet the standard for medical reasons.  (Mov. Br. at 9-11.)  The Opposition responds only that the "medical hardship language O'Reilly cites belongs to a different rule" for activity-only programs and that the Wellness Regulation departs from the Wellness Statute by purporting to require the reasonable alternative standard "be offered 'to a broader group.'"  (Opp. at 4.)  Plaintiff asserts "[t]hat textual mismatch is no technicality."  (*Id*. at 5.)  *O'Reilly agrees*. The Wellness Regulation's departure from its originating statute is no technicality; it is an irreconcilable conflict.

"[A] reviewing court has the responsibility 'to decide whether the law means what the agency says.'"  *Minn. Telecom All. v. Fed. Commc'ns Comm'n*, 175 F.4th 905, 920–21 (8th Cir. 2026).  The DOL says that for outcome-based programs, plans must provide a reasonable

alternative standard "for any individual who does not meet the initial standard."  29 C.F.R. § 2590.702(f)(3)(iv).  Thus, the "Court must decide whether the law under which the DOL purportedly implemented this regulation—the PHSA, as incorporated into ERISA—imposes that same obligation."  *Williams v. Target Corp.*, 2026 WL 2111339, at *5 (D. Minn. July 22, 2026) (finding no ERISA violation where a plan did not satisfy a disclosure requirement found only in the Wellness Regulation, not in the Wellness Statute).  It does not.  The Wellness Statute states that a "wellness program *shall not violate* this section" if the plan complies with the statute's requirements, including that plans must provide a reasonable alternative standard for medical reasons.  42 U.S.C. § 300gg-4(j)(3) (emphasis added).  Thus, "a plan complying with the text of" the Wellness Statute "could nevertheless be liable for violating a [] requirement that Congress did not impose."  *Williams*, 2026 WL 2111339, at *6.  To be sure, the Wellness Statute permits agencies to "promulgat[e] regulations in connection with" the Statute (42 U.S.C. § 300gg-4(n)), but those regulations "may not extend a statute or modify its provisions."  *Campbell v. Galeno Chem. Co.*, 281 U.S. 599, 610 (1930); *see also United States v. Adair*, 38 F.4th 341, 359 (3d Cir. 2022) (a regulation cannot contradict a statute by introducing a new requirement).

B.     **ERISA Does Not Require O'Reilly To State That
Physician Recommendations Will Be Accommodated**

Similarly, the Wellness Statute "plainly enumerates two items for disclosure (the availability of [a] reasonable alternative standard and the possibility of waiver)—and notice that a physician's recommendations will be accommodated is not one of them."  *Williams*, 2026 WL 2111339, at *6.  Courts should "ordinarily resist reading words or elements into a statute that do not appear on its face."  *United States v. Jungers*, 702 F.3d 1066, 1075 (8th Cir. 2013).  Thus, the "'best reading of the statute'—that is, 'the one the court would have reached if no agency were involved'—is that ERISA does not impose a physician-accommodation notice requirement."

8

*Williams*, 2026 WL 2111339, at *7; *Spencer*, 2026 WL 2111153, at *21 ("The 2013 Regulations carved language relating to notice that personal physician recommendations will be accommodated out of whole cloth without a statutory foothold.")

## IV. THE OPPOSITION FAILS TO SUPPORT PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS (COUNTS III AND IV)

### A. Plaintiff Does Not Dispute That His Fiduciary Breach Claims Cannot Proceed Absent A Statutory Violation Claim

The Opposition does not dispute that Plaintiff's breach of fiduciary duty claims fail as a matter of law if the Court dismisses Counts I and II. (*See* Mov. Br. at 13.) That is because O'Reilly cannot have breached a fiduciary duty as long as Plaintiff received everything promised to him by the Plan. *See Plesha*, 2026 WL 279321, at *8 (dismissing tobacco premium claims holding, "[d]efendant cannot have breached any fiduciary duty to the [p]lan because the [p]lan complies with ERISA"); *Spencer*, 2026 WL 2111153, at *21 ("Plaintiff's claims of [fiduciary] breach still fail to state a claim . . . because the Plan meets all of the aforementioned statutory and regulatory requirements"). Plaintiff asserts "O'Reilly used [tobacco premiums] as a substitute for employer funding" which "left the Plan with a smaller asset base." (Opp. at 13.) But O'Reilly never promised any "employer funding" to the Plan. O'Reilly's choice not to make discretionary contributions to the Plan cannot be the basis for a breach of fiduciary duty claim.

### B. The Opposition Fails To Establish That O'Reilly Acted As A Fiduciary With Respect To The Conduct Challenged In The FAC

The Opposition argues that O'Reilly acted as a fiduciary with respect to the challenged conduct because the FAC "does not just challenge the settlor decision to offer a tobacco incentive in the abstract. It challenges the acts O'Reilly took after adopting it." (Opp. at 13.) The Opposition provides only two examples of such conduct, neither of which demonstrate that O'Reilly acted as a fiduciary. *First*, the Opposition states that O'Reilly "draft[ed] and

9

disseminat[ed] participant communications" and "fail[ed] to review those communications and systems for compliance." (*Id.*) But as explained above, Plaintiff has not pled an injury that is traceable to the communications (*supra* Section I.A), so O'Reilly's purported drafting and reviewing of communications is not relevant to fiduciary status. *Second*, the Opposition argues O'Reilly "us[ed] surcharge proceeds within a self-funded Plan to reduce its own contribution obligation." (Opp. at 13.) But the FAC concedes that is how the Plan is designed. (FAC ¶ 53 ("Because the Plan is self-funded, every dollar of tobacco surcharge withheld from participant wages reduced—dollar-for-dollar—the contributions Defendant would otherwise have had to make from its own assets to fund Plan claims").) The Opposition does not explain how the self-funded *design* of the Plan is a fiduciary act instead of a settlor one. (*See* Mov. Br. a 13-14.)[5]

### C.     The Opposition Ignores O'Reilly's Prohibited Transactions Arguments

The Opposition does not address O'Reilly's central point supporting the dismissal of Plaintiff's prohibited transaction claims: to state a § 406 claim, a plaintiff must plead the existence of a transaction as contemplated by § 406; Plaintiff has not done so. (*See* Mov. Br. at 15.) *Cunningham* (cited at Opp. at 14) supports O'Reilly's argument: "Section 1106(a)(1)(C)'s bar is categorical: Any *transaction* that satisfies its three elements is presumptively unlawful." *Cunningham*, 604 U.S. at 700 (emphasis added). Plaintiff does not identify any transaction.

### CONCLUSION

For all the foregoing reasons and for the reasons described in the Moving Brief, the Court should dismiss the FAC with prejudice.

---

[5]     *Mehlberg v. Compass Grp. USA, Inc.*, 2025 WL 1260700 (W.D. Mo. Apr. 15, 2025), and *Lipari-Williams* (Opp. at 13) are inapposite. *Mehlberg* alleged that the defendant "was duty-bound to deposit the tobacco surcharge amounts into the Plan" but "did not deposit them into the Plan." 2025 WL 1260700, at *7. There is no such allegation here. *Lipari-Williams* concerned class certification, not the adequacy of allegations. 339 F.R.D. at 527.

Dated:   July 29, 2026

Respectfully submitted,

 */s/* Michael S. Hines
Charles B. Cowherd Mo. Bar No. 27087
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Missouri 65804
Telephone:     417-888-1000
Facsimile:     417-881-8035
ccowherd@spencerfane.com

Michael S. Hines (*pro hac vice*)
Mary E. Grinman (*pro hac vice*)
Nicholle P. Knapp (*pro hac vice*)
**SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP**
500 Boylston Street
Boston, Massachusetts 02116
Telephone:     617-573-4800
Facsimile:     617-573-4822
michael.hines@skadden.com
mary.grinman@skadden.com
nicholle.knapp@skadden.com

*Counsel for Defendant
O'Reilly Automotive, Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri, Southern Division, on this 29th day of July 2026, with notice of the case activity generated and sent electronically to all counsel of record.

Dated: July 29, 2026                    */s/* Michael S. Hines

12